**LOYAL ORDER OF MOOSE LODGE 1044 OF TROY, Appellant,**

v.

**OHIO LIQUOR CONTROL COMMISSION, Appellee.**

[Cite as *Loyal Order of Moose Lodge 1044 of Troy v. Ohio
Liquor Control Comm.* (1995), 105 Ohio App.3d 306.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 95–CA–6.

Decided June 23, 1995.

*Kurt O. Gearhiser;* and *William H. Thornburgh,* for appellant.

*Betty Montgomery,* Attorney General, and *Barbara A. Serve,* Assistant Attorney General, for appellee.

---

BROGAN, Presiding Judge.

The appellant, Loyal Order of Moose Lodge 1044 of Troy, Ohio, appeals from the judgment of the Miami County Common Pleas Court, upholding an order of the Ohio Liquor Control Commission which ordered the appellant's permit revoked effective April 9, 1994.

The facts are not essentially in dispute and are well stated in the trial court's decision:

"The record shows that at approximately 6:15 p.m. on Wednesday, November 3, 1993, Harold Torrens, an investigator of the Ohio Department of Liquor Control, entered the liquor permit premises through a door which was opened by a patron exiting the premises. He entered the premises for the purpose of investigating suspected illegal gambling. At the time appellant's premises was in operation and open to members. He moved to the bar area and purchased and received a Bud Light beer from the barmaid on duty. She rang the sale on the cash register and placed the money in the cash drawer. She did not request membership identification from the investigator. Torrens observed a large quantity of tip tickets and a coin board behind the bar area. He requested five tip tickets from the barmaid, who removed five tip tickets and handed them to the investigator, requesting five dollars in payment. Investigator Torrens paid the barmaid five dollars and observed her place the money in a wooden box. After a brief time Investigator Torrens requested four more tip tickets from the barmaid. She handed the tip tickets to the investigator, requesting four dollars in payment. The investigator complied and observed the barmaid place the money into the wooden box. Investigator Clapp, who was waiting outside the permit premises, then entered the building and both investigators identified themselves to the barmaid, informed her of the violations, and served her with a violation notice for three violations: (1) sale of beer to a nonmember (ORC 4303.17), (2) permitting and/or allowing gambling (tip tickets) Ohio Administrative Code 4301:1–1–53, and (3) permitting and/or allowing gambling (coin board) Ohio Administrative Code 4301:1–1–53.

"Thereafter, the agents searched the permit premises, seizing, among other things, five blue plastic tubs containing numerous tip tickets, four garbage bags containing tip tickets, two envelopes containing tip tickets, one Bud Light beer can, its amber fluid, and $1,151.50 in United States currency.

"The hearing before the commission was held on March 16, 1994, with appellant being represented by counsel and its administrator as a representative. At the hearing the department dismissed the first and third violations in exchange for appellant's stipulating to but denying violation number two. Violation number two charged that:

"'On or about November 3, 1993, your agent and/or employee, Alice Zirkle and/or Marvin Buchanan and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises gaming or wagering on a game of skill or chance, to-wit: sale of tip tickets in violation of 4301:1–1–53, a regulation of the Ohio Liquor Control Commission.'"

The trial court found that the evidence in the case supported the finding of the commission that the appellant had violated Ohio Adm.Code 4301:1–1–53, which provides:

"(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."

The trial court found that the evidence was sufficient to support a showing of profit in regard to the tip ticket violations. The court noted that it considered the stipulations and admissions noteworthy. The trial court stated the following in upholding the commission's decisions:

"The vast majority of testimony of the appellant's representative before the commission involves his explanation of how appellant spent the profits generated from the illegal gambling, and part, if not all of the admissions relate specifically to sale of tip tickets. Moreover, in addition to the admissions, the court finds that the manner in which the tickets were sold and money collected in regard to the nine tip tickets sold, the photo copies and description of the tip tickets included in the exhibits, and the other facts and circumstances described in the Investigators' report collectively constitute sufficient evidence to establish that the tip tickets were sold for profit."

Although the appellant has raised a single assignment of error, that the trial court's judgment was against the manifest weight of the evidence, it also raises the issue that the search conducted by the liquor control agents violated the Ohio and United States Constitutions.

The United States Supreme Court has yet to decide whether the Fourth Amendment exclusionary rule is applicable with respect to evidence offered in a hearing before a local, state or federal administrative agency. "This issue, it must be emphasized at the outset, is a distinct one from that of whether

administrative officials may under some circumstances engage in searches on a less restrictive basis than police investigating crime, although an affirmative determination on the latter question sometimes makes unnecessary resolution of the first." (Footnote omitted.) 1 LaFave, Search & Seizure (3 Ed.1996) 199, Section 1.7(e).

For instance, in *Solomon v. Liquor Control Comm.* (1965), 4 Ohio St.2d 31, 33 O.O.2d 339, 212 N.E.2d 595, the Ohio Supreme Court avoided the question whether the exclusionary rule was applicable to hearings before a public administrative hearing because it concluded that the licensed premises were subject to warrantless inspection without probable cause by commission agents.

"Courts have held or at least assumed that the exclusionary rule is applicable in a wide variety of administrative proceedings." LaFave, *supra*, at 199; see cases cited therein.

In *One 1958 Plymouth Sedan v. Pennsylvania* (1965), 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170, the United States Supreme Court held that the exclusionary rule is to be applied to proceedings which are "quasi-criminal in character" in that their object "is to penalize for the commission of an offense against the law." The court noted that the forfeiture proceeding at issue could "result in even greater punishment than the criminal prosecution" for the underlying conduct. As the Supreme Court has observed in a related context, it is "surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." *Camara v. Mun. Court* (1967), 387 U.S. 523, 530, 87 S.Ct. 1727, 1732, 18 L.Ed.2d 930, 936.

Professor LaFave has observed:

"[E]xclusion for purposes of deterrence would be justified if admission of the evidence * * * could be expected to encourage future illegal searches by such agents because of their expectation that in any event the evidence would be usable in the administrative process.

"For these reasons, it is certainly appropriate to apply the exclusionary rule in administrative proceedings when, for example, the police have searched the premises known to be licensed for the sale of liquor and turned the fruits over to the administrative agency empowered to revoke the license." LaFave, *supra*, at 204.

In *Bd. of License Commrs. of Tiverton v. Pastore* (R.I.1983), 463 A.2d 161, the Supreme Court of Rhode Island held that although technically a civil proceeding, a liquor license revocation proceeding based on an illegal search and seizure to uncover stolen goods is in substance and effect a quasi-criminal proceeding since its object is to penalize for the commission of an offense against the law, thereby

invoking application of the exclusionary rule to exclude introduction of fruits of an illegal search in the proceeding.

Justice Weisberger noted that it is reasonable to conclude that the exclusionary rule applies in administrative proceedings wherein a state agency responsible for control of liquor sales is empowered to impose fines or declare forfeitures of licenses for criminal acts and other violations by those operating or connected with the establishment. He noted that a highly relevant factor to be considered is the magnitude of the consequences for the individual involved. He noted that other courts have appropriately stressed the seriousness of taking away a person's license to operate an establishment selling liquor.

Justice Weisberger also noted a second important consideration is the extent to which the exclusion of the evidence would deter illegal searches and seizures. Thus, he noted, exclusion for purposes of deterrence would be justified if admission of the evidence could be expected to encourage future illegal searches by such agents because of their expectation that in any event the evidence would be admissible in the administrative process. See, also, *Finn's Liquor Shop, Inc. v. State Liquor Auth.* (1969), 24 N.Y.2d 647, 249 N.E.2d 440, 301 N.Y.S.2d 584; *Pennsylvania Liquor Control Bd. v. Leonardziak* (1967), 210 Pa.Super. 511, 233 A.2d 606. The court in the latter case noted that the policy of deterring unconstitutional activity by suppressing evidence would not be served if police, after being barred from using evidence against a licensee in a criminal court, could use the identical evidence to punish with equal or greater severity through the machinery of the Liquor Control Board. 210 Pa.Super. at 514, 233 A.2d at 608.

Recently the Franklin County Court of Appeals held that the exclusionary rule applied in a civil forfeiture proceeding wherein the Ohio Department of Liquor Control sought forfeiture of certain items, gambling devices and proceeds, discovered on the permit holders premises. *Dept. of Liquor Control v. FOE Aerie 0456* (1994), 99 Ohio App.3d 380, 650 N.E.2d 940.

In the Franklin County case the Liquor Control agent followed a club member through the main entrance after that member gained access by using a key card. Judge Tyack rejected the department's contention that the search was reasonable under the administrative-search exception as enunciated by the Ohio Supreme Court in *Stone v. Stow* (1992), 64 Ohio St.3d 156, 593 N.E.2d 294. Judge Tyack noted:

"In *Stone,* the court stated that a warrantless administrative search may be conducted "* * * if the statute authorizing the search does not interfere with a reasonable expectation of privacy protected by the Fourth Amendment.' *Id.* at 164, 593 N.E.2d at 300. In the context of the *civil* case before it, the court

concluded that pharmacists, being in such a pervasively regulated business, have a 'reduced' expectation of privacy in the prescription records they keep. Further, in the circumstances of the civil action before it, the court stated that physicians and patients have no reasonable expectation of privacy in such records.

"We do not find *Stone* dispositive of the Fourth Amendment issue before us. The *Stone* court was careful to distinguish the situation presented from that which it addressed earlier in the context of criminal cases. The situation presented in Stone was ' * * * not a situation in which the police officers [were] attempting to use warrantless administrative searches to uncover evidence of general criminality.' *Stone,* 64 Ohio St.3d at 165, 593 N.E.2d at 301. The court cited *State v. Akron Airport Post No. 8975, supra* [ (1985), 19 Ohio St.3d 49, 19 OBR 42, 482 N.E.2d 606], and *State v. VFW Post 3562* (1988), 37 Ohio St.3d 310, 525 N.E.2d 773, and noted that 'general criminality' *was* at issue in cases where officers conducted 'liquor inspections,' or warrantless 'administrative' searches, to look for gambling devices. Similarly, this court has distinguished reasonable administrative searches from those where liquor control agents gained access to permit premises by 'trickery, deceit, or misrepresentation.' *BPOE Lodge 0170 Gallipolis v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 811, 596 N.E.2d 529 (warrantless search and seizure was lawful under plain view and consent exceptions).

"In *VFW Post 3562, supra,* the Supreme Court of Ohio held, at paragraph two of the syllabus:

" 'Evidence obtained as a result of a warrantless administrative search may not be used in a criminal prosecution under a statute of general criminality not related to provisions of R.C. Chapters 4301 and 4303.' " (Emphasis *sic.*) *FOE Aerie 0456, supra,* at 384–385, 650 N.E.2d at 943.

Several courts have found that sneaking into a private club is a trespass and that evidence gained by such an entry should be suppressed. *State v. Grand Rapids Sportsman's Club* (Nov. 23, 1992), Maumee M.C. No. 92–CRB–00087, unreported; *State v. Am. Legion Post 0598* (Mar. 9, 1994), Kettering M. C. No. 93–CRB–01178, unreported.

In *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129, the Ohio Supreme Court held that in the absence of any judicially recognized exception to the warrant requirement, government officers are not privileged to deceptively gain entry into the private home or office of another without a warrant, where the home or office is not a commercial center of criminal activity, and where an invitation was not extended by the occupant for the purpose of conducting illegal activities.

There is no dispute in this record that L.O.O.M. Lodge #1044 was a private club, open to members only, and that the liquor agent gained entry into the lodge deceptively. Therefore, we find that the trial court erred in overruling the appellant's motion to suppress the evidence gained in the administrative search. The appellant's assignment of error in this respect is sustained. That portion of the assignment of error which challenges the trial court's judgment as being against the manifest weight of the evidence is rendered moot by our resolution of the suppression issue. See App.R. 12.

Nothing in this opinion precludes liquor agents from conducting reasonable searches without a search warrant if executed pursuant to statutory standards which limit the scope, time, and place of the search. For example, when a permittee is suspected of engaging in gambling activities, it would not be unreasonable to inspect the permittee's premises during regular business hours after the agent gains entry after knocking and announcing his purposes and providing adequate proof of his identification as a liquor agent. Such a search, if conducted pursuant to statutory standards, would not be unreasonable under the Fourth Amendment or the Fourteenth Amendment. See *State v. VFW Post 3562, supra.*

The judgment of the trial court is reversed.

*Judgment reversed.*

FREDERICK N. YOUNG and GRADY, JJ., concur.

GRADY, Judge, concurring.

I am fully in accord with Judge Brogan's opinion. If the purpose of the exclusionary rule is to discourage illegal conduct by law enforcement officers, it matters not that the proceeding in which the rule is applied is civil rather than criminal. However, the setting for application of the exclusionary rule has historically been in criminal prosecutions, cases in which the person whose rights were violated by the illegal conduct concerned is in jeopardy of being deprived of his right to liberty or subjected to alienation of his interests in property by fine, penalty, or forfeiture as punishments for the offense alleged. In applying the exclusionary rule to a civil case, one in which the offender may be deprived of a mere license, we depart from that historical setting. However, I believe that the application is a sound one in a case of this kind.

Ohio has long followed the rule that a permit to sell liquor is not property but only a license, that is, a permission to exercise a privilege which may be suspended or revoked for good cause shown. *Solomon v. Liquor Control Comm.* (1965), 4 Ohio St.2d 31, 33 O.O.2d 339, 212 N.E.2d 595. Loss of a privilege for good cause has not been viewed as a form of forfeiture sufficiently serious to

warrant application of the exclusionary rule to evidence offered to show the cause alleged. But such a loss may be sufficiently serious for that purpose, as is the case when important economic interests of the licensee are bound up in the privilege and loss of the permission to exercise it will produce a concomitant and substantial property loss to the licensee. The punitive nature of the consequence sought by the state is then substantially equivalent to a criminal fine, penalty, or forfeiture, and the state ought not be permitted to obtain that result with evidence that it obtained illegally.

Here, revocation of the liquor permit which the Liquor Control Commission has issued to the L.O.O.M. Lodge may produce a substantial loss of investments which the L.O.O.M. Lodge has made in order to exercise the privilege granted in the permit. That loss does not, of course, excuse the gambling violations that are alleged to have occurred on the premises to which the permit applies. But the property interests of which the L.O.O.M. Lodge will be deprived by revocation of its permit are sufficiently substantial to warrant exclusion of evidence that was illegally obtained by officers of the Liquor Control Commission from any prosecution which has as its object the revocation of the permit.