[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 108.]

**AL POST 763, APPELLEE, *v*. OHIO LIQUOR CONTROL COMMISSION, APPELLANT.**

**VFW POST 4235, APPELLEE, *v*. OHIO LIQUOR CONTROL COMMISSION, APPELLANT.**

**VFW POST 4615, APPELLEE, *v*. OHIO LIQUOR CONTROL COMMISSION, APPELLANT.**

**AL POST 0184, APPELLEE, *v*. OHIO LIQUOR CONTROL COMMISSION, APPELLANT.**

**[Cite as *AL Post 763 v. Ohio Liquor Control Comm.*, 1998-Ohio-367.]]**

*Search and seizure—Peace officers and authorized agents or employees of Department of Liquor Control need not identify themselves prior to gaining entry to liquor permit premises, when—Reasonable expectation of privacy in liquor permit premises is minimal.*

1. The reasonable expectation of privacy in liquor permit premises is minimal because permit holders, regardless of permit class, consent to inspection of the premises by authorized agents through the provisions of the Liquor Control Act and accompanying administrative rules and regulations.

2. When conducting a warrantless administrative search pursuant to a constitutionally valid statutory inspection program, peace officers and authorized agents or employees of the Department of Liquor Control need not identify themselves prior to gaining entry to the permit premises.

(Nos. 96-1269, 96-1572, 96-1575 and 96-2797—Submitted February 18, 1998—Decided June 17, 1998.)

APPEAL from the Court of Appeals for Greene County, No. 95-CA-78.

APPEALS from the Court of Appeals for Miami County, Nos. 95-CA-42, 95-CA-41 and 96-CA-17.

_____

**{¶ 1}** The four consolidated cases before the court present the following issue: whether constitutional protections against unreasonable search and seizure prohibit agents of the Enforcement Division of the Department of Liquor Control from entering liquor permit class D-4 "private" clubs without first identifying themselves as agents there to conduct an administrative search.[1]

**{¶ 2}** The exact details of each case are irrelevant to the legal question that must be answered. Therefore, in the interest of brevity, we provide only a general description of the facts.

**{¶ 3}** The cases under consideration involve American Legion and VFW posts holding class D-4 liquor permits pursuant to R.C. 4303.17. As D-4 permit holders, the posts may sell beer and intoxicating liquor to members only. The posts are prohibited from permitting gambling on the liquor permit premises. Ohio Adm.Code 4301:1-1-53(B).

**{¶ 4}** In each case, upon receiving complaints of gambling, the Department of Liquor Control sent agents to investigate the posts. These agents used various "deceptive" methods to gain entry into the posts.[2] Whatever their means of entry, it is uncontroverted that the agents neither identified themselves nor stated their purpose for entry. Once inside, the agents conducted warrantless administrative searches of the permit premises pursuant to Ohio Adm.Code 4301:1-1-79. Each post was cited for gambling violations based on the evidence obtained during these searches. Hearings on the violations before the Liquor Control Commission

_____

1. In July 1997, the enforcement functions of the Department of Liquor Control were transferred to the Department of Public Safety. The Liquor Control Division of the Department of Public Safety is currently responsible for enforcing the provisions of Title 43 of the Revised Code. Am.Sub.S.B. No. 162. Authorized agents are known as Liquor Control Investigators. R.C. 5502.61.

2. The record in case No. 96-2797 does not indicate how the agents entered the post. In case No. 96-1269, the agents used an electronic key card, presumably given only to members, to enter through a locked door. In case Nos. 96-1572 and 96-1575, the agents "tailgated" into the premises by waiting outside, and then passing through the locked entrance on the heels of a member.

concluded with the commission ordering various penalties.

{¶ 5} On appeal to the court of common pleas, the posts advanced uniform arguments: all evidence and agent testimony should be suppressed because the warrantless administrative search was unreasonable due to the "deceptive" means of entry. The courts of common pleas agreed and, in each case, sustained the post's motion to suppress and reversed the commission's orders.

{¶ 6} The Second District Court of Appeals affirmed the decision of the court of common pleas in all four cases. The court announced that in order for the agents' search of the permit premises to have been reasonable, the agents should have gained entry by knocking, announcing their purpose for being on the premises, and providing proof of their identification as agents.

{¶ 7} Each cause is now before this court upon the allowance of a discretionary appeal.

––––––––––––––––––

*Fawley & Associates, Darrell E. Fawley, Jr.* and *Kurt O. Gearhiser,* for appellees.

*Betty D. Montgomery,* Attorney General, *David A. Raber* and *Barbara A. Serve,* Assistant Attorneys General, for appellant.

––––––––––––––––––

**Cook, J.**

{¶ 8} The Second District Court of Appeals has decided a series of cases holding that agents of the Enforcement Division of the Department of Liquor Control must identify themselves and their purpose for entry prior to conducting a warrantless administrative search of a class D-4 liquor permit premises. We disagree. Agents may conduct constitutional, warrantless administrative searches of liquor permit premises pursuant to Ohio Adm.Code 4301:1-1-79, without first

knocking, announcing their presence, and stating an intent to conduct a search.[3]

WARRANTLESS SEARCHES

{¶ 9} " '[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable.' " *Wilson v. Arkansas* (1995), 514 U.S. 927, 931, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976, 980, quoting *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 327, 105 S.Ct. 733, 740, 83 L.Ed.2d 720, 727. The Fourth Amendment provides no protection against searches that are reasonable, but serves only to prohibit those searches that are recognized as unreasonable. *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164, 593 N.E.2d 294, 300. Warrantless searches are generally considered unreasonable. *State v. Penn* (1991), 61 Ohio St.3d 720, 723, 576 N.E.2d 790, 792, citing *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 311-312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305, 311. Accordingly, evidence obtained by means of a warrantless search is subject to exclusion, unless the circumstances of the search establish it as constitutionally reasonable.

{¶ 10} Certain warrantless searches have been judicially recognized as reasonable notwithstanding the presumption of unreasonableness dictated by the Fourth Amendment. Administrative searches are included among these exceptions to the warrant requirement. *Stone v. Stow,* 64 Ohio St.3d at 164-165, 593 N.E.2d at 300, fn. 4.

{¶ 11} Ohio Adm.Code 4301:1-1-79 provides for warrantless administrative searches by authorized agents of the Department of Liquor Control. Because the permit holders do not challenge the constitutionality of that

---

3. The "knock and announce" rule has its origins in the English common-law protection of a man's house as " 'his castle of defense and asylum.' " *Wilson v. Arkansas,* 514 U.S. at 931, 115 S.Ct. at 1916, 131 L.Ed.2d at 980, quoting 3 Blackstone, Commentaries (1768) 288. The rule developed from the recognition that individuals should be afforded the opportunity to comply with the law and avoid the property destruction to the home occasioned by forcible entries. *Richards v. Wisconsin* (1997), 520 U.S. 385, ___, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615, 624, fn. 5. Additionally, individuals should be given the opportunity to prepare themselves, as many forcible entries into the home occur late at night or in the early morning. *Id.* These considerations are not present in the cases at bar.

administrative provision, we presume it complies with the *New York v. Burger* (1987), 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601, standard of constitutional acceptability. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, 98. See, also, R.C. 1.47. Nevertheless, the dissent engages in an analysis that confuses inquiry into the constitutionality of the administrative provision with the narrower question that is proper here. The only question before this court is whether an agent's deceptive means of entry renders an otherwise valid warrantless administrative search unreasonable.

{¶ 12} The Second District hinges its determination that all unannounced warrantless entries into class D-4 establishments are unreasonable on the vulnerable conclusion that D-4 permit holders possess an expectation of privacy greater than privacy expectations held by all other classes of liquor permit holders. See *Bill's Corner Cafe, Inc. v. Ohio Liquor Control Comm.* (Mar. 28, 1997), Clark App. No. 96-CA-93, unreported, 1997 WL 156575 (Second District refused to extend the "knock and announce" rule to all permit holders.). Analysis of the relevant case law leads us to the contrary conclusion — that private club liquor permit holders, subject to the same pervasive governmental regulation as other liquor industry businesses, cannot reasonably expect any greater level of privacy from governmental intrusion. See *Stone v. Stow*, 64 Ohio St.3d at 164-165, 593 N.E.2d at 300.

## EXPECTATIONS OF PRIVACY

{¶ 13} In assessing what constitutes a reasonable search under the Fourth Amendment, courts consider the defendant's reasonable expectation of privacy in the premises searched. The reasonable expectation of privacy in liquor permit premises is minimal because permit holders, regardless of permit class, consent to inspection of the premises by authorized agents through the provisions of the Liquor Control Act and accompanying administrative rules and regulations. *Solomon v. Liquor Control Comm.* (1965), 4 Ohio St.2d 31, 36, 33 O.O.2d 339,

342, 212 N.E.2d 595, 599. Contrary to the dissent's suggestion, these rules and regulations do not require liquor agents to suspect a violation prior to entering a permit premises during business hours to conduct an inspection pursuant to Ohio Adm.Code 4301:1-1-79(A)-(C).

{¶ 14} The dissent states that "Ohio Adm.Code 4301:1-1-79(D) provides that prior to conducting inspections (as opposed to mere entry) there must be a reasonable suspicion that a violation has in fact occurred." Although the rule is portrayed by the dissent as having broad application, an observant reading of Ohio Adm.Code 4301:1-1-79(D) reveals a more tapered precept: there must be a reasonable suspicion that evidence of a violation will be found therein prior to "search and seizure of *materials in locked closets, filing cabinets, cellars, attics, storage rooms, desks, * * * safes [and the like]*." (Emphasis added.) The provision further explains that "*[n]othing in this rule shall be construed to contravene the plain view doctrine.*" (Emphasis added.) The administrative rule does not require agents to possess a reasonable suspicion of a violation in order to enter liquor permit premises and conduct routine inspections, pursuant to Ohio Adm.Code 4301:1-1-79(A)-(C), of those items in plain view.

{¶ 15} Fourth Amendment considerations respecting entry are implicated in the cases before us solely because many D-4 permit holders lock the entrance to the premises. The typical establishment holding a liquor permit is open to the public, and thus liquor agents and law enforcement officers can enter the permit premises during business hours without identifying themselves. But because D-4 permit holders are permitted to sell alcohol to members only, those establishments often lock the entrance to the permit premises during business hours. This enables the permit holder to limit ingress to the premises, thereby ensuring compliance with the R.C. 4303.17 prescript that alcohol be sold only to members.

{¶ 16} The factors of a locked door and "members only" admittance policy spurred the Second District to accord a heightened privacy expectation to D-4

private clubs, one analogous to that enjoyed by an individual in his home. The Second District decisions focus on the club *members'* expectations of privacy. The expectation of privacy possessed by individual club members is of no moment, however, in the context of an administrative search conducted to monitor compliance with Ohio liquor laws and regulations. Instead, we consider only the *permit holder's* expectation of privacy. "[T]he expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home." *Donovan v. Dewey* (1981), 452 U.S. 594, 598-599, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 262, 269.

{¶ 17} Regulating admittance to permit premises by locking the entrance cannot elevate the constitutional protection of a liquor permit holder. There is no language in R.C. 4303.17 requiring that a D-4 establishment lock its doors. A locked entrance door does not support imputing to those holding D-4 permits an expectation of privacy greater than that enjoyed by liquor permit holders of other classes. This is an artificially created privacy expectation. The pervasive regulation that is characteristic of the liquor industry, combined with the permit holder's awareness of the extent of this regulation, compels this conclusion.

{¶ 18} The United States Supreme Court explained the liquor proprietor's reduced expectation of privacy in *Marshall v. Barlow's, Inc., supra,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305, as resulting from the heavily regulated nature of the industry. The court stated:

"Certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise. Liquor and firearms are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.

" * * * 'The businessman in a regulated industry in effect consents to the restrictions placed upon him.' " (Citations omitted.) *Id.* at 313, 98 S.Ct. at 1821,

56 L.Ed.2d at 312, quoting *Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 271, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596, 601.

{¶ 19} A proprietor must accept, along with the benefits, the burdens of being granted the privilege to sell alcohol in Ohio.

{¶ 20} The warrantless administrative searches adopted to enforce the Liquor Control Act and the applicable administrative rules and regulations are a well-established fact of doing business in the liquor industry. See, *e.g.*, *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60; *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 19 OBR 42, 482 N.E.2d 606. The D-4 permit holder cannot thwart permitted, unannounced inspections on the theory that a locked entrance door prohibits them.

DECEPTIVE ENTRY

{¶ 21} The opinions issued by the Second District Court of Appeals in the cases currently under consideration rely on that court's earlier decision in *Loyal Order of Moose Lodge 1044 of Troy v. Ohio Liquor Control Comm.* (1995), 105 Ohio App.3d 306, 663 N.E.2d 1306. In *Loyal,* which in turn cited *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129, the Second District determined that the liquor control agent could not deceptively gain entry to premises that were not a "commercial center of criminal activity" when an invitation to enter was not extended "for the purpose of conducting illegal activities." *Loyal* at 311, 663 N.E.2d at 1309.

{¶ 22} *Pi Kappa Alpha*, however, is distinguishable. Unlike the four cases at bar, *Pi Kappa Alpha* involved *criminal charges* resulting from the sale of alcohol without a permit. Law enforcement officers "deceptively" gained entry into a *residence* that had not been converted into a commercial center for criminal activity. Most important, the defendants in *Pi Kappa Alpha* were *not liquor permit holders*. Thus, *Pi Kappa Alpha* and *Loyal* fail to inform the issues at bar.

{¶ 23} The United States Supreme Court recognizes that "unannounced,

even frequent" inspections are essential to the effective enforcement of those statutes and rules governing highly regulated industries such as liquor and firearms. *United States v. Biswell* (1972), 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87, 92. Where the highly regulated commercial business keeps its doors locked during business hours, "unannounced" inspections are nearly impossible. The need to achieve unannounced inspections of highly regulated business premises that are kept locked during business hours creates a situation analogous to that of the undercover police officer attempting to infiltrate inaccessible centers of criminal activity. Realistically, " 'in the enforcement of vice, liquor or narcotics laws, it is all but impossible to obtain evidence for prosecution save by the use of decoys. There are rarely complaining witnesses. The participants in the crime enjoy themselves. * * * Therefore, the law must attempt to distinguish between those deceits and persuasions which are permissible and those which are not.' " *Lewis v. United States* (1966), 385 U.S. 206, 210-211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312, 316, fn. 6, quoting Model Penal Code Tent. Draft No. 9 (1959) 16, Section 2.10, comment.

{¶ 24} Although the *Lewis* case concerned a deceptive entry into Lewis's home by a federal narcotics agent, we believe the court's holding instructs as to which deceits and persuasions are tolerated by the Fourth Amendment. The *Lewis* court decided that Lewis had significantly decreased his privacy expectations by converting his home into a commercial center used to conduct illegal transactions. *Id.* at 211, 87 S.Ct. at 427, 17 L.Ed.2d at 316.

{¶ 25} Likewise, in the regulatory context, liquor permit holders possess a reasonable expectation of privacy analogous to that of individuals conducting commercial criminal transactions in residences. Applying the *Lewis* rationale, liquor control agents, authorized employees of the Department of Liquor Control, and peace officers attempting to enforce liquor industry laws and regulations may reasonably enter D-4 permit premises to conduct regulatory inspections though the

entry is the result of some deception.

## CONSENT

**{¶ 26}** The Liquor Control Commission argues that the investigating agents entered the various post premises with consent, citing *State v. Posey* (1988), 40 Ohio St.3d 420, 534 N.E.2d 61. The D-4 permit holder's consent, however, is unnecessary when an agent conducts a warrantless administrative search pursuant to a constitutionally acceptable statutory inspection program, and therefore is not relevant to the resolution of these cases.[4]

**{¶ 27}** By participating in the highly regulated liquor industry, the D-4 permit holder's consent to inspections of the permit premises is stipulated. See, *e.g., Marshall v. Barlow's, Inc.*, 436 U.S. at 313, 98 S.Ct. at 1821, 56 L.Ed.2d at 312; *Solomon v. Liquor Control Comm.*, 4 Ohio St.2d at 36, 33 O.O.2d at 342, 212 N.E.2d at 599. Locking the doors to the premises neither creates a requirement for *consent to enter* nor negates the *consent to search* already given by virtue of applying for and accepting a liquor permit.

## CONCLUSION

**{¶ 28}** Accordingly, we hold that when conducting a warrantless administrative search pursuant to a constitutionally valid statutory inspection program, peace officers and authorized agents or employees of the Department of Liquor Control need not identify themselves prior to entering permit premises. Our holding is limited to those warrantless *administrative* searches conducted during the regular business hours of the permit premises of liquor permit holders of any class. Thus, in each of the four cases at bar, we reverse the judgment of the court of appeals.

---

4. Entry into D-4 permit premises by force may require prior announcement. However, even when force is used, not every entry requires an announcement. *Wilson v. Arkansas,* 514 U.S. at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982. The reasonableness of the entry is still the ultimate inquiry. *Id.* Under certain circumstances, it is reasonable to enter by force without prior announcement. *Richards v. Wisconsin,* 520 U.S. at ___, ___, 117 S.Ct. at 1421-1422, 137 L.Ed.2d at 624.

*Judgments reversed.*

MOYER, C.J., concurs.

PFEIFER and LUNDBERG STRATTON, JJ., concur in the syllabus and judgment.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

_____

**DOUGLAS, J., dissenting.**

{¶ 29} Today the majority sends a disturbing message to some private business owners in this state. According to the majority, owners of "heavily regulated" private businesses have minimal, if any, privacy rights in their premises and are subject to unbridled deceptive inspections from government officials. Specifically, in paragraph two of the syllabus, the majority holds that "[w]hen conducting a warrantless administrative search pursuant to a constitutionally valid statutory inspection program, peace officers and authorized agents or employees of the Department of Liquor Control need not identify themselves prior to gaining entry to the permit premises." To that end, a plurality of two further endorse that these officials "may reasonably enter D-4 permit premises to conduct regulatory inspections though the entry is the result of some deception." In reaching these conclusions, the majority itself engages in surreptitious activity by consciously ignoring constitutional imperatives and misapplying the law with respect to proper warrantless administrative inspections. Thus, because the majority has further eroded the priceless protections provided by the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, I must dissent.

{¶ 30} The majority holds that the methods employed by the officials in gaining access to the liquor permit premises were proper because permit holders actually consent to deceptive inspections upon being granted liquor licenses by the state. Specifically, the majority states that "[t]he reasonable expectation of privacy

in liquor permit premises is minimal because permit holders, regardless of permit class, *consent to* inspection of the premises by authorized agents through the provisions of the Liquor Control Act and accompanying administrative rules and regulations." (Emphasis added.) However, liquor permit holders do not surrender all protections afforded to them under the Fourth Amendment and Section 14, Article I of the Ohio Constitution simply because they have applied for and have been granted a liquor license. See *State v. VFW Post 3562* (1988), 37 Ohio St.3d 310, 312, 525 N.E.2d 773, 775.

{¶ 31} A warrantless administrative search is permissible only if the statute authorizing the search does not interfere with a reasonable expectation of privacy protected by the Fourth Amendment. *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164, 593 N.E.2d 294, 300. Ohio's statutory and administrative scheme governing warrantless inspections of liquor permit establishments is contained in R.C. 4301.10 and Ohio Adm.Code 4301:1-1-79.

{¶ 32} Specifically, R.C. 4301.10(A)(6) authorizes the Department of Liquor to "[c]onduct inspections of liquor permit premises to determine compliance with the administrative provisions of this chapter and Chapter 4303. of the Revised Code and the rules adopted under those provisions by the liquor control commission. * * *" R.C. 4301.10(A)(6)(c) provides that "[i]nspections conducted pursuant to division (A)(6) of this section *shall be conducted in a reasonable manner. A finding by any court of competent jurisdiction that the inspection was not conducted in a reasonable manner in accordance with this section or any rules promulgated by the commission may be considered grounds for suppression of evidence. * * *"* (Emphasis added.)

{¶ 33} Further, Ohio Adm.Code 4301:1-1-79 sets forth time, place, and scope limitations on warrantless administrative inspections of liquor permit premises. This regulation provides:

"(A) Said inspections shall be conducted for the limited purpose of

determining compliance with the provisions of the liquor control act and the rules of the liquor control commission.

"(B) Such inspections may be conducted only during those hours in which the permit holder is open for business and only by authorized agents of the department or by any peace officer * * *. Inspections may be conducted at other times only if it reasonably appears that all or part of the permit premises is in operation.

"(C) Said inspections shall be conducted on that portion of the premises that is included as part of the licensed premises. * * *

"(D) This provision for warrantless administrative inspections includes but is not limited to the search and seizure of materials in locked closets, filing cabinets, cellars, attics, storage rooms, desks, and safes located on the licensed premises, *so long as there is reasonable suspicion that evidence of violation of the liquor control act or the rules of the liquor control commission will be found therein.* Such material shall include books and records, wherever they may be found on the premises. Nothing in this rule shall be construed to contravene the plain view doctrine. * * *" (Emphasis added.)

{¶ 34} Importantly, there is no language within R.C. 4301.10 or Ohio Adm.Code 4301:1-1-79 that even remotely suggests that officials have unlimited authority and may use whatever means they choose when attempting to inspect and gain entry into private liquor establishments. Rather, R.C. 4301.10(A)(6)(c) explicitly states that such administrative inspections must be conducted in a *reasonable* manner. In addition, Ohio Adm.Code 4301:1-1-79(D) provides that prior to conducting inspections (as opposed to mere entry), there must be a reasonable suspicion that a violation has in fact occurred.[5] Accordingly, the

---

5. The plurality's deviation from customary practices of this court by responding, in the plurality opinion, to this dissent is interesting and noteworthy. The plurality has added that the Liquor Control Act and the accompanying regulations "do not require liquor agents to suspect a violation

majority's suggestion that liquor permit holders, by virtue of owning a liquor license, actually consent to unlimited artifice by inspecting officials is a fabrication itself.

**{¶ 35}** Furthermore, we have determined that a warrantless search cannot be predicated upon consent acquired by deception. See *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129. In *Pi Kappa Alpha*, liquor control agents were invited to enter a fraternity house by the house manager after one of the agents falsely represented that he was an alumnus of another chapter and that his brother was interested in joining the fraternity. While inside, an agent purchased a can of beer from a "Coke" machine. The fraternity was eventually charged with, among other things, selling an alcoholic beverage without a permit. In *Pi Kappa Alpha*, we held:

"Pursuant to Section 14, Article I of the Ohio Constitution, and in the absence of any judicially recognized exception to the warrant requirement, government officers are not privileged to deceptively gain entry into the private home or office of another without a warrant, where such home or office is not a

---

prior to entering a permit premises during business hours." I totally agree! That is clearly the law with respect to warrantless inspections of liquor permit premises and any clarification was not needed. However, no matter what the plurality says, or how it says it, there is absolutely nothing within the Liquor Control Act or Ohio Adm.Code 4301:1-1-79 that authorizes the use of deceptive practices by government officials. To be sure, the plurality has completely ignored or misapplied the relevant law in these types of cases. See, *e.g.*, *New York v. Burger* (1987), 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601; and *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129.

In addition, I would also point out that the plurality, in attempting to justify the deceptive practices at issue in the cases at bar, completely distorts the holding of *Lewis v. United States* (1966), 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312. In *Lewis*, an undercover narcotics agent, after misrepresenting his identity and stating his desire to purchase narcotics, was *invited* into the defendant's residence where an unlawful drug sale occurred. *Lewis*, however, has nothing to do with warrantless administrative inspections of closely regulated Ohio businesses. Moreover, *Lewis* involved a deceptive entry into a *private* residence. Curiously, this is a factor which the plurality uses to distinguish *Pi Kappa Alpha* from the cases at bar.

In sum, if the majority chooses to abridge the constitutional rights of citizens of this state by condoning the use of unbridled and unnecessary deceptive practices of government officials, then, unfortunately, that will be the law. I, however, cannot concur in such action.

commercial center of criminal activity, and where the invitation to enter the private home or office was not extended by the occupant for the purpose of conducting illegal activities."

{¶ 36} The plurality has elected not to follow *Pi Kappa Alpha*. Rather, the plurality attempts to distinguish *Pi Kappa Alpha* from the present cases by stating that the charges involved in *Pi Kappa Alpha* were *criminal* in nature, that the "[l]aw enforcement officers 'deceptively' gained entry into a *residence* that had not been converted into a commercial center for criminal activity," and that "the defendants in *Pi Kappa Alpha* were *not liquor permit holders*." (Emphasis *sic*.)

{¶ 37} I concede these points, but I am not persuaded as to their legal significance. The plurality effectively ignores the essential point of *Pi Kappa Alpha*, which was that a warrantless search may not be predicated upon consent procured by stealth or deception. In *Pi Kappa Alpha*, liquor control agents fabricated their identities and purposely deceived the house manager in order to gain entry into the private establishment. Moreover, in *Pi Kappa Alpha,* the invitation extended to the agents was for the sole purpose of showing the fraternity house with the probable goal of recruiting a potential member.

{¶ 38} The Fourth Amendment and Section 14, Article I of the Ohio Constitution were designed to protect against the abuse of official authority. Significantly, these constitutional provisions protect against *unreasonable* searches and seizures. The standard of reasonableness certainly applies to warrantless administrative searches.

{¶ 39} In *New York v. Burger* (1987), 482 U.S. 691, 702-703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601, 614, the United States Supreme Court noted that a warrantless administrative search will be deemed reasonable so long as (1) a substantial government interest is found to exist, (2) *the warrantless inspection is necessary to further the regulatory scheme*, and (3) the statute's inspection program in terms of certainty and regularity of its application provides a constitutionally

adequate substitute for a warrant. Additionally, to satisfy the third part of the test, the regulatory scheme must also "advise the owner of the commercial premises that the search is being made pursuant to the law *and has a properly defined scope, and it must limit the discretion of the inspecting officers*." (Emphasis added.) *Id*., 482 U.S. at 703, 107 S.Ct. at 2644, 96 L.Ed.2d at 614.

{¶ 40} There is no question that states have a substantial interest in regulating the distribution and use of liquor within their borders. However, by today's decision, the majority has given officials *unlimited discretion* to determine what tactics may be employed in the inspection of private liquor establishments. The plurality merely states that officials "need not identify themselves prior to gaining entry to the permit premises" and that they may use "some deception" in doing so. In failing to limit the discretion of inspecting officials, the plurality has expanded the scope of Ohio's well-defined statutory scheme regarding warrantless administrative searches.

{¶ 41} The Second and Sixth Appellate Districts have determined that where officials conducting an administrative inspection pursuant to R.C. 4301.10(A)(6) and Ohio Adm.Code 4301:1-1-79 enter a private liquor establishment by deception and fail to identify themselves and announce their purpose, the inspection violates the reasonableness requirement of the Fourth Amendment and Section 14, Article I of the Ohio Constitution. See, *e.g.*, *Loyal Order of Moose Lodge 1044 v. Ohio Liquor Control Comm*. (1995), 105 Ohio App.3d 306, 663 N.E.2d 1306; *AL Post 0184 v. Ohio Liquor Control Comm*. (Nov. 8, 1996), Miami App. No. 96-CA-17, unreported, 1996 WL 647633; and *VFW Post 1238 v. Ohio Liquor Control Comm*. (May 10, 1996), Huron App. No. H-95-065, unreported, 1996 WL 238772. Notably, these courts determined that the use of deception by the officials to gain entry into the liquor establishments was *not necessary* to further the enforcement of Ohio's liquor laws. See, also, *FOE Aerie 0582 Twin City v. Ohio Liquor Control Comm*. (Sept. 2, 1997), Franklin App. No.

97APE03-339, unreported, 1997 WL 559475. Specifically, in *AL Post 0184*, the Court of Appeals for Miami County concluded:

"We have yet to be persuaded that it is unreasonable for a member of a private club to expect that agents of the government will refrain from entering the club by deception, posing as members. *For one thing, there would seem to be no necessity for agents of the Commission to do so*. In the case before us, for example, if the agents had identified themselves as agents of the Commission upon entering the establishment, the electronic video gambling devices could not have been flushed down the toilet, and it even seems unlikely that the tip ticket box could have been made to disappear without being observed by the watchful eyes of the agents. Each of the electronic video machines contained U.S. currency, and was in working order. We doubt that the Post would have got very far, with any reasonable finder of fact, in arguing that those machines were not there to be used for gambling purposes, but were there purely for decorative purposes." (Emphasis added.)

{¶ 42} In the present cases, there is absolutely no evidence that the agents had any suspicion that announcing their presence prior to gaining access to the establishments would have in any way interfered with their ability to properly enforce Ohio's liquor laws. The agents conducted the warrantless administrative inspections hoping to find illegal gambling devices. However, the agents did not need to use deceptive tactics to gain entry into the establishments. The use of deception in each of the cases was simply not necessary to further Ohio's regulatory scheme. *Burger*, 482 U.S. at 702, 107 S.Ct. at 2644, 96 L.Ed.2d at 614. The commission has failed to demonstrate that the agents' actions in gaining access to the establishments were reasonable under the Fourth Amendment and Section 14, Article I of the Ohio Constitution. Accordingly, I dissent.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

_____