This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, the State of Ohio, appeals the decision of the Summit County Court of Common Pleas, suppressing evidence. We reverse and remand.
On January 8, 2001, Detective Donny Williams of the City of Akron Police Department, Street Narcotics Uniformed Detail ("SNUD"), observed a sport utility vehicle traveling in the opposite direction on Case Avenue in Akron, Ohio. Detective Williams clearly saw the operator of the vehicle and recognized him as Solomon Stallings because Detective Williams knew him from previous drug-related arrests. Detective Williams believed that Stallings had an outstanding felony warrant for his arrest, because one or two months earlier, Detective Williams had reviewed a warrant packet and saw the name "Stallings" on one of the warrants. However, the warrant, in fact, was for Alan Stallings' arrest. Detective Williams admitted to not independently verifying the existence of the warrant on his computer system, explaining that having Stallings' date of birth and social security number would facilitate the computer verification of the warrant.
Upon the belief that there was an arrest warrant for Solomon Stallings, Detective Williams radioed other SNUD officers with the information. In response, another officer stated that he had stopped Stallings a few months earlier and that Stallings did not have a valid driver's license at that time. Detectives Williams and Alan Jones, who was also a SNUD officer, testified that they did not observe any traffic violations regarding the sport utility vehicle. Detective Jones stopped the vehicle, which defendant-appellee, Stallings, was operating and in which defendants-appellees, Alexander Quarterman and John Penson, were passengers. Detective Williams and a third police cruiser arrived shortly thereafter. Once the vehicle was stopped, none of the occupants was free to leave.
Detectives Williams and Jones testified that, as Stallings rolled down the window, they noticed a strong odor of burnt marijuana emanating from the interior of the vehicle. Detective Williams testified that while defendants were in the vehicle, he could see in plain view pieces of marijuana scattered on the floorboards, the seats, and the console of the vehicle. Detective Jones asked Stallings to give him the ignition key, and Stallings complied. Stallings also produced a valid driver's license, when informed that the officers believed him to be driving without a valid license. The detectives also learned that the outstanding warrant was for Alan, not Solomon, Stallings' arrest.
The occupants were subsequently asked to exit the vehicle. Detective Jones testified that after the occupants exited the vehicle, he noticed marijuana particles scattered in the interior of the vehicle. Although Detectives Williams and Jones testified that the defendants consented to be searched and that Stallings consented to have the automobile searched, the trial court found that "[t]he [d]efendants did not agree to either the search of their person[s] or the SUV."
Quarterman was searched first. According to Quarterman, without first patting him down, Detective Simcox reached into Quarterman's pockets and discovered $500.00 in counterfeit money and what was later determined to be counterfeit crack cocaine. Stallings and Penson were also searched for contraband, but neither contraband nor weapons were found on them. The detectives then searched the sport utility vehicle. They discovered marijuana seeds and stems in the passenger compartment of the vehicle and found a loaded 9mm semi-automatic handgun under some clothes in the back of the vehicle. The detectives, however, did not find any marijuana cigarettes or roaches and did not find any other paraphernalia for smoking marijuana. The defendants were arrested.
The Summit County Grand Jury indicted Quarterman, Stallings, and Penson for carrying concealed weapons, in violation of R.C.2923.12, having weapons while under disability, in violation of R.C. 2923.13(A)(3), and unlawful possession of a dangerous ordnance, in violation of R.C. 2923.17(A). Additionally, Quarterman and Stallings were indicted on possession of marijuana, in violation of R.C. 2925.11(A). Quarterman was indicted on forgery, in violation of R.C. 2913.31(A)(3), and possession of counterfeit controlled substances, in violation R.C. 2925.37(A). Defendants filed motions to suppress the evidence discovered during the search conducted on January 8, 2001. The state responded in opposition. A suppression hearing was held on February 14, 2001. In a decision journalized on February 28, 2001, the trial court granted defendants' motions to suppress the evidence, finding that, while the police officers had reasonable suspicion to make an investigatory stop of the vehicle, they did not have probable cause to search either the defendants' persons or the vehicle. This appeal followed.
The State asserts a single assignment of error:
 THE TRIAL COURT COMMITTED ERROR WHEN SUPPRESSING THE EVIDENCE IN THIS CASE.
The State avers that the trial court erred in suppressing the evidence obtained during the warrantless search of defendants' persons and the vehicle, which was conducted on January 8, 2001, as the police officers had probable cause to search both the people and vehicle and exceptions to the warrant requirement applied.[1] We agree.
When an appellate court reviews an order relative to the suppression of evidence, the reviewing court uses a de novo
standard of review. State v. Bing (1999), 134 Ohio App.3d 444,448, citing Ornelas v. United States (1996), 517 U.S. 690, 699,134 L.Ed.2d 911, 920. However, this court reviews the facts only for clear error, giving due weight to the trial court as to the inferences drawn from those facts. Bing,134 Ohio App.3d at 448. Thus, our duty is to determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry
(1994), 95 Ohio App.3d 93, 96.
The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. Section 14, Article I of the Ohio Constitution has nearly identical language to theFourth Amendment and similarly prohibits unreasonable searches and seizures. State v. Kinney (1998), 83 Ohio St.3d 85, 87.
 For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. Katz v. United States (1967), 389 U.S. 347, 357, * * * 19 L.Ed.2d 576, 585; State v. Broom (1992), 63 Ohio St.3d 349, 350[.] This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. Mapp v. Ohio
(1961), 367 U.S. 643, * * * 6 L.Ed.2d 1081; AL Post 763 v. Ohio Liquor Control Comm. (1998), 82 Ohio St.3d 108, 111[.]
State v. Moore (2000), 90 Ohio St.3d 47, 49.
Recently, the Ohio Supreme Court held that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." Id. at syllabus. Furthermore, once probable cause was established by the smell of marijuana detected by a person qualified to recognize its odor, the officer "may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement," and the search of a defendant's person at the scene of the motor vehicle stop is justified on the basis of exigent circumstances. Id. at 48, 51.
In the present case, Detectives Williams and Jones testified that, when the vehicle's window was rolled down, they immediately smelled a strong odor of burnt marijuana emanating from the interior of the vehicle.[2] Both detectives were narcotics officers for SNUD and their qualifications were stipulated to at the suppression hearing. Presumably, the detectives had extensive training and experience in identifying and detecting the smell of marijuana. We, therefore, find that, as Detectives Williams and Jones were qualified to recognize the aroma of marijuana and smelled marijuana emanating from the interior of the vehicle, they had probable cause to search both the defendants and the vehicle. Furthermore, no search warrant pursuant to the Fourth Amendment was required based upon the automobile exception and "exigent circumstances" exception to the warrant requirement. See Id. at 53. Consequently, on the basis of Moore, we conclude that the trial court erred in suppressing the evidence seized as a result of the January 8, 2001 search.
Accordingly, appellant's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings not inconsistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
Exceptions.
 __________________________ WILLIAM G. BATCHELDER
BAIRD, J., WHITMORE, J. CONCUR.
[1] In its February 28, 2001 judgment entry, the trial court found that the officers had reasonable suspicion "to permit the stopping of the SUV and make an inquiry." Appellees do not specifically aver that the trial court erred in determining that the officers had reasonable suspicion to stop the vehicle; therefore, this court will only address the issue of whether the officers had probable cause to search the people and the vehicle after the stop.
[2] In its judgment entry, the trial court found that "[w]hen the window was rolled down Det. Jones smelled a strong odor of burnt marijuana."