The STATE of Ohio, Appellant,

v.

SCAGGS, Appellee.

[Cite as *State v. Scaggs* (1999), 134 Ohio App.3d 162.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74653.

Decided Sept. 7, 1999.

William D. Mason, Cuyahoga County Prosecuting Attorney, and *Martina Kulick,* Assistant Prosecuting Attorney, for appellant.

*Thomas E. Frye,* for appellee.

JAMES M. PORTER, Administrative Judge.

Plaintiff-appellant, the state of Ohio, appeals from the trial court order suppressing evidence of drugs discovered by police officers during a patdown following a traffic stop for suspicious activity. The state contends the trial court erred because the traffic stop was proper under the circumstances and the patdown necessary to protect the officers. We find no error and affirm.

At the suppression hearing, Detective Michael Rinkus of the Cleveland Police Department testified for the state. He had six and one-half years on the force and is currently assigned to the Second District Vice Unit. Rinkus, along with his partner, was on patrol duty in an unmarked car on December 30, 1997, in several high drug areas or "hot spots."

That night, at approximately 10:00 p.m., as they turned onto West 46th Street off of Clark and headed south, the detectives spotted two males moving between the street and sidewalk near the corner of West 46th and Catharina. As the vice car got closer, the two males ducked behind a car. The detectives made a quick left turn onto Catharina and stopped by the car, at which point they observed the defendant coming up from a "ducked position" in front of the car and making his way to the driver's door, as though he was getting in. The other male was getting into the car on the passenger side. Det. Rinkus stated that he suspected "foul/suspicious activity" as a result of these actions. He recognized the male ducking in front of the car to be Jamie Scaggs from prior arrests for traffic violations.

The detectives approached the males and ordered them to place their hands on the car. As the males did so, the detectives began a patdown search for weapons for their protection. Rinkus felt several heavy objects in defendant's coat pockets and could not exclude the possibility that Scaggs had a weapon in his pockets. Rinkus began removing objects from Scaggs's right coat pocket, and as he did so, the lining of the pocket came out. Several white objects and dust fell to the ground, along with paper, keys, and a pager. Defendant was ordered to kneel down while Rinkus attempted to retrieve the white objects. He was only able to retrieve one of the objects, which he believed to be crack cocaine. He could not find the other white objects. Defendant was handcuffed and placed in the detectives' car. The "rock" was tagged, placed in an evidence bag, and ultimately examined at the S.I.U. laboratory, where it tested positive for crack cocaine.

The defense presented two witnesses, the defendant and his companion at the scene.

Frank Wiles testified that he has known the defendant for five or six years. He walked to defendant's house on December 30, 1997. He and defendant left to

go to a party and Wiles entered the car through the right rear door (*i.e.*, back seat). Defendant had forgotten his keys in the house, and Wiles went inside to retrieve them. The police officers arrived as Wiles was returning to the car; defendant already was sitting in the driver's seat. Wiles testified that Scaggs was searched twice and that officers were looking for a gun in the car. Wiles admitted that he did not see everything that was going on during defendant's pat-down, since he was being patted down at the same time. Wiles was not held or charged.

The defendant testified that he has felony convictions for discharging a firearm into a habitation and receiving stolen property. He further testified along the same lines as Wiles, except he added that the police shined a flashlight into the car and demanded to know where "the gun" was. Defendant testified that the officers pulled him out of the car, searched the car first, then searched him, but did not find a gun. Defendant denied that Det. Rinkus found any contraband during the patdown. He also denied being in possession of any cocaine that day.

Plaintiff's sole assignment of error states as follows:

"I. The trial court committed reversible error in granting the defendant's motion to suppress evidence."

Our standard of review of a trial court's judgment on a motion to suppress was set forth by this court in *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174, as follows:

"In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."

In granting the defendant's motion to suppress, the trial court found that the police "officers did articulate a reasonable suspicion of criminal activity" justifying a *Terry* stop. However, the trial court further held as a matter of law that before police officers can pat down a suspect for weapons during an investigative stop, they must have some "reason to believe that the person is armed and dangerous." Even though the court found that the officers did articulate a reasonable suspicion of criminal activity justifying the stop, the court stated that there was "not one bit of evidence regarding pat down." The court stated, "When you go the further intrusion, you have to have additional basis. And there

was nothing offered here." We find that the court did not err in applying the law to the circumstance at hand.

Pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1881, 20 L.Ed.2d 889, 905–907, police may conduct a limited investigatory stop when, based upon specific and articuable facts and inferences drawn therefrom, an officer has a reasonable belief that the individual is engaged in criminal activity. In the case herein, the officer testified that he observed the defendant and the other male duck down behind a car when they saw the undercover police car. Based on this observation, the trial court was correct in finding that the officers had a reasonable basis to suspect that criminal activity was afoot. *Terry v. Ohio, supra; State v. Bobo* (1988), 37 Ohio St.3d 177, 180–81, 524 N.E.2d 489, 492–493.

We now address whether the officer's pat-down search for weapons was justified. The Ohio Supreme Court in *State v. Evans* (1993), 67 Ohio St.3d 405, 408, 618 N.E.2d 162, held:

"Under *Terry*, a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to the others. * * * .' *Id.* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908. * * * 'Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of circumstances, the officer may initiate a protective search for the safety of himself and others.' *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of syllabus."

The transcript of the suppression hearing does not support the pat-down search conducted by the officer. Nowhere does the officer state that he had a suspicion that the defendant was armed and dangerous or that the officer feared for his safety. As the United States Supreme Court in *Terry v. Ohio, supra,* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909 held:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or others was in danger.

"* * *

"In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

Based on the lack of evidence that the officer conducted the search on something more than a "hunch" the trial court correctly suppressed the evidence.

The state's sole assignment of error is overruled. The court's order suppressing the evidence is affirmed.

*Judgment affirmed.*

SPELLACY and JAMES D. SWEENEY, JJ., concur.