JOURNAL ENTRY AND OPINION
Plaintiff-appellant State of Ohio appeals from the trial court's decision to grant the motion to suppress filed by the defendant-appellee Eric Robinson. The appellee was indicted for possession of crack cocaine in violation of R.C. 2925.11; preparation of drugs for sale in violation of R.C. 2925.07, and possession of criminal tools in violation of R.C.2923.24.
On March 25, 2000, Cleveland Police Officers Carlos Robles and John Cole, who are assigned to the Fourth District, were on routine patrol in the area of East 149th Street and Kinsman, in Cleveland, Ohio. Officer Robles is an experienced officer who has made many arrests for drug violations in the Fourth District. While stopped at the intersection, Officer Robles observed two males standing on the west side of the New Orleans Seafood restaurant between two parked automobiles.
These two men were later identified as Mr. Larry Camp and the appellee. The men were standing in the shadows next to the building and between a car and a van. The officers observed these two men for twenty to thirty seconds. The men were huddled together and every so often the appellee would move to the end of the van and look back and forth. Mr. Camp kept looking over his shoulder. These activities drew the attention of the police because it seemed suspicious that they would be waiting in that area as though looking out for someone.
Shortly thereafter, another male was seen running across the area. This third man was in his early forties, had a beard, and wore ill-kempt clothing. The man bypassed the front of the building and ran towards the appellee yelling hey, hey, hey and waving his arms. The appellee began to walk towards this individual, but when the appellee observed the zone car, the appellee began to frantically wave the other man back. The man stopped, turned his head and looked at the police vehicle. The appellee backed up into the shadows again. Based on this activity, the officers believed a drug transaction had been interrupted.
The officers pulled up to the restaurant and Officer Robles attempted to approach the appellee. The appellee responded by turning his back and placing his hands in his pockets. Mr. Camp ran interference and tried to corral the officer against the zone car so that he could not reach the appellee. After a few seconds, Mr. Camp complied with officer Robles' orders to move.
Officer Robles testified that the appellee was reluctant to place his hands on the zone car when ordered to do so. Once the appellee was in position, a pat-down search was conducted of the appellee's person. The appellee attempted to shield the right side of his body from the search. In response to questioning, the appellee informed the officers that he had a knife in his back pocket. The officers removed the knife and placed the appellee under arrest. During the more complete search conducted after the appellee was handcuffed, a small black spare key holder containing sixty rocks of cocaine was found in the appellee's right front pocket. The officers had no difficulty seeing as the area is well lit.
On cross-examination Officer Robles testified that he used the word huddle to describe his observation that the men were standing with their shoulders drawn in and looking down. At this point the officers were approximately one hundred feet from the appellee. The actions of the appellee and Mr. Camp were not suspicious because they were standing together too long. The officer's suspicion was not aroused until the third man entered the area.
The appellee presented the testimony of Mr. Larry Camp, the man he stood near in the parking lot of the New Orleans Seafood restaurant. Mr. Camp, who owns his own automobile mechanic shop, testified that he and the appellee were discussing work to be performed on the appellee's car. Upon his arrival at the restaurant, the appellee was exiting the building. Mr. Camp stated that he and the appellee were near his vehicle when the police pulled into the parking lot. The conversation observed by the police was a discussion between the two men regarding work on the wheel well and the cost of Mr. Camp's services. Mr. Camp was pointing to his vehicle to demonstrate to the appellee what work he would perform. No drug transaction occurred. Upon their arrival, one officer ordered Mr. Camp to place himself against the zone car. Mr. Camp denied blocking the officers from the appellee. Mr. Camp also testified as to the bright lighting in the parking lot and the lack of any shadows.
David Malone testified on behalf of the appellee that he and the appellee know each other from living in the same neighborhood. Mr. Malone owns his own construction business and is self-employed. The appellant happened past where Mr. Malone was working and the two decided to have dinner at the New Orleans Seafood restaurant. Upon arrival, they entered the building and ordered their food. The appellee went back outside the restaurant while Mr. Malone waited for the food. After paying for the food, Mr. Malone exited the restaurant and returned to the appellee's vehicle. Mr. Malone observed the appellee speaking with another man and discussing work to be done on his motor vehicle. Mr. Malone returned to the appellee's vehicle and sat inside so that the appellee would know he was ready to leave. However, while the appellee was still talking to the other man, Mr. Malone decided he needed to use the restroom. He approached the appellee stating that he needed to use the facilities. The appellee informed Malone that the restaurant had no bathroom and waved him to the rear of the building.
After the hearing, the trial court made the following observations:
 THE COURT: All right. The Court, having listened to all the evidence, believes that it can rule at this point.
 And there is a recent case from our own Court of Appeals that I can provide to each of you probably in a day or so, but the law generally is fresh in my mind, as well as others, but there is a very recent case where one of the trial judges, I believe it was reversed here in the Court of Appeals or actually sustained at the trial court on a suppression of evidence motion where actually the facts were better for the State than they are in this case, by a considerable leap, I might add. But I'll get that case and give it to both if you would like to look at it.
 The Court, listening to all of the evidence believes that the — at this point I'm not sure exactly which theory the State is proceeding under, i.e., that they had probable cause to conduct a search of the defendant, or that they were in fear of some injury to themselves which necessitated some type of a stop and frisk situation.
 But in any case, I think that there is no testimony to that effect, but that the testimony of the officers falls short.
The Court makes the following observations:
 One, there was no cash exchanged that the police officers observed. As a matter of fact, there was nothing exchanged between anybody in this case that was observed by the police indicating that there was some kind of a cash transaction for drugs or anything else.
 That the conversation between the truck or the van and the car outside of the Orleans in such close proximity, two males merely talking in close proximity together without any exchange of anything being observed, in the Court's opinion, doesn't give rise to pulling in a parking lot and searching one of them.
 After Mr. Robinson moves way from the van and the vehicle that we now know was owned by Mr. Camp, the testimony, you know, unrebutted, and I really believe that his testimony, and that is Mr. Malone, who was there, was in the car, so forth, says he walked up and Mr. Robinson waved him behind the New Orleans because there is no facilities in the restaurant itself, apparently, for the bathroom facilities, for lack of a better term at this point. . .
 But Mr. Malone seemed to the Court to be a pretty believable witness, and I believe that, one, he was there, and, two, that he apparently approached him and was waved into the back. Certainly the waving of Mr. Malone into the back of the building could be mistaken for waving somebody off, which would account for the third person, whoever it was that left the scene, according to the police.
 Under what the police had there to stop the Defendant Robinson and asking him to stop, even if he was standing behind Mr. Camp, I see no reason I don't believe there's any valid reason to come up and take Mr. Robinson and throw him up against the car and ask him, you know, have you got anything illegal on you.
 As a digression, I'm sure both lawyers here understand that under U.S. vs. Miranda, that once a defendant is under custodial interrogation which has been described as once his freedom of movement is contained in any significant fashion, if you are going to ask him any questions, and once he's a suspect of any illegal activity, then you must advise him of his constitutional rights not to incriminate himself at that point.
 So the Court believes that once somebody is placed up against a car, freedom of movement, obviously, is not has been restrained, and according to the officers, at that point they have suspicion that it's a criminal activity, i.e., drug transaction of some type, to ask him has he got anything illegal on him without warning him of his constitutional rights would be in violation of U.S. vs. Miranda. His freedom of movement was curtailed at that point in a significant fashion. There was an interrogation about a criminal act, and he didn't have to say anything, obviously. But he did have a right not to answer, and he did incriminate himself by saying I have a knife in my back pocket.
 So the totality of the circumstances here, this Court finds, were short of giving the police reasonable grounds to detain and search and obtain the illegal crack cocaine from this defendant, and the motion to suppress is going to be granted.
(T. 109-112.) The appellant sets forth one assignment of error:
 AS A MATTER OF LAW, THE TRIAL COURT ERRED BY GRANTING THE DEFENDANT'S MOTION TO SUPPRESS.
The appellant argues that the officers unearthed the sixty rocks of crack cocaine during a lawful search of the appellee and therefore the trial court erred in granting the motion to suppress. The appellant herein asserts both that the stop of the appellee was warranted based on the officers' reasonable suspicion of criminal activity and that the subsequent search was permissible based upon the reasonable suspicion that the appellee was armed.
As the Ohio Supreme Court noted in State v. Orr (2001),91 Ohio St.3d 389, the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 14, Article I of the Ohio Constitution, which contains language nearly identical to its federal counterpart, also prohibits unreasonable searches and seizures. Because Section 14, Article I and theFourth Amendment contain virtually identical language, has been interpreted as affording the same protection. See State v. Robinette (1997),80 Ohio St.3d 234, 238.
In State v. Moore (2000), 90 Ohio St.3d 47, the court held that for a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514,19 L.Ed.2d 576, 585; State v. Brown (1992), 63 Ohio St.3d 349, 350. This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; AL Post 763 v. Ohio Liquor Control Comm. (1998), 82 Ohio St.3d 108, 111.
As the appellant properly states, under Terry v. Ohio (1968), 392 U.S. 1, a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. An officer must be able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Id. This suspicion that criminal activity was afoot is to be based on the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177.
When discussing an investigatory stop, the Ohio Supreme Court held the following in State v. Evans (1993), 67 Ohio St.3d 405:
 Under Terry, a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *." Id. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908. Justice Harlan's concurring opinion in Terry emphasizes that "the right to frisk must be immediate and automatic" where the lawfully stopped detainee is under suspicion for a crime of violence. Id. at 33, 88 S.Ct. at 1886, 20 L.Ed.2d at 913. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." Adams v. Williams(1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." State v. Bobo(1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus.
In State v. Scaggs (1999), 134 Ohio App.3d 162, this court reviewed a case where, similar to the one sub judice, the trial court's decision to grant the defendant's motion to suppress was upheld. Defendant Scaggs was observed on the street between two motor vehicles. The officer observed suspicious behavior, stopped the defendant to investigate, and thereafter conducted a pat-down search. This court found that the suspicious behavior warranted a Terry stop, but that because there was no evidence that the officer believed the defendant to be armed and dangerous, the pat-down search was not proper. This court found that without evidence that the officer acted on something more than a hunch, the trial court correctly suppressed the evidence.
Finally, this court notes that at a suppression hearing, as at trial, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460; Mills, supra, at 366. As this court held in State v. Bryson (April 26, 2001), Cuyahoga App. No. 77984, unreported, appellate courts should give great deference to the judgment of the trier of fact. Ornelas v. United States (1996), 517 U.S. 690, 134 L.Ed.2d 911, 116 S.Ct. 1657; State v. George (1989), 45 Ohio St.3d 325. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Klein (1991), 73 Ohio App.3d 486; State v. Armstrong(1995), 103 Ohio App.3d 416; State v. Williams (1993),86 Ohio App.3d 37.
When considering the within matter, it is clear to this court that the trial court made certain factual determinations which support its decision to grant the motion to suppress. The record supports the court's conclusion that the officers did not observe any transaction in progress. The court found that two men talking in close proximity without any exchange does not give rise to the search which followed in this particular case. It is especially noteworthy that the court found the testimony of Mr. Malone to be unrebutted and believable.
The record demonstrates that Mr. Malone essentially testified that he inquired of the appellee the location of restroom facilities and the appellee, after stating that the restaurant contained no such facilities, waved him to the rear of the building. It is understandable that the actions of the appellee could reasonably have been mistaken by the officers for a warning to the third man not to approach because the police were in the vicinity. This evidence validates the initial investigatory stop.
However, the officers went beyond the permissible parameters of a Terry stop by throwing the appellee against the police cruiser, asking him if he had anything illegal on him, and patting him down for weapons. The record is devoid of evidence that the officers had any suspicion that the appellee was carrying any weapon. The officers conducted a custodial search and the appellant should have been informed of his due process rights under Miranda prior to such a search.
The appellant's assignment of error is overruled.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and COLLEEN CONWAY COONEY, J., CONCUR.
 __________________________________ JAMES D. SWEENEY, PRESIDING JUDGE: