**HAEHN, Appellant,**

v.

**OHIO STATE RACING COMMISSION, Appellee.**

[Cite as *Haehn v. Ohio State Racing Comm.* (1992), 83 Ohio App.3d 208.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–769.

Decided Nov. 10, 1992.

*Mary Joseph Maxwell,* for appellant.

*Lee Fisher,* Attorney General, and *Sheryl D. Erlichman,* Assistant Attorney General, for appellee.

JOHN C. YOUNG, Presiding Judge.

This matter is before this court upon the appeal of Douglas G. Haehn, appellant, from the June 10, 1992 judgment entry of the Franklin County Court of Common Pleas which affirmed the decision of the Ohio State Racing Commission ("commission").

On November 24, 1990, appellant was suspended by the stewards at Beulah Park for hiding a hypodermic needle and syringe containing Procaine Penicillin in a stall under his control. Appellant appealed this ruling to the commission pursuant to Ohio Adm.Code 3769–7–42. On December 13, 1990, appellant requested permission to drop his appeal. The commission took no action on appellant's request to drop his appeal at its December 19, 1990 meeting, but tabled the issue until January 23, 1991. At that time, appellant's request was granted. Appellant served a twenty-day suspension imposed by the stewards, paid a $250 fine and forfeited his $500 appeal bond.

On July 18, 1991, appellant raced a horse at Beulah Park which tested positive by random urine check for Terbutaline, a violation of Ohio Adm.Code 3769–8–01(A)(2), (B)(1) and (B)(10). The stewards imposed a sixty-day suspension and a $250 fine, which appellant did not appeal because of the absolute insurer rule. See Ohio Adm.Code 3769–8–02.

As a result of the positive test for Terbutaline, the stewards searched appellant's truck and found a two-hundred-fifty-milligram injectable bottle of Procaine Penicillin, a ten-milligram injectable bottle of Acepromazine Maleate and syringes and needles. This was a violation of Ohio Adm.Code 3769–9–01(B)(5), (7), (15), and 3769–8–07(A). Both these incidents were referred to the commission for further consideration. Appellant appealed from the search of his truck and the recovery of the drugs and the paraphernalia.

The violations were consolidated by the commission and a hearing was held April 16, 1991 before a hearing officer. A report and a recommendation were prepared by the hearing officer and reviewed by the commission. At its June 14, 1991 meeting, the commission adopted the findings of fact and conclusions of law in the report of the hearing officer but modified the recommendations as follows: The commission ordered that appellant be suspended for one hundred twenty days and fined $250 for the positive finding of Terbutaline in the horse named Turnonthego; appellant was fined $250 for the filing of a frivolous appeal; and, appellant was suspended for one year and fined $1,000 for the possession of hypodermic equipment and drugs. The commission also ordered that appellant be denied access to all race tracks in Ohio during his suspension.

Appellant filed a notice of appeal from the commission's order with the court of common pleas pursuant to R.C. Chapter 119. The court issued a decision and

entry which affirmed the order of the commission. Thereafter, appellant filed a notice of appeal in this court setting forth the following three assignments of error:

"I. The Court below erred as a matter of law in interpreting O.R.C. Section 119.091 and O.A.C. 3769–7–42.

"II. The Court below erred as a matter of law in interpreting O.A.C. 3769–8–07 and 3769–1–40.

"III. The penalty imposed by the Commission for the foreign drug positive test is not supported by reliable, probative and substantial evidence and is not in accordance with law."

Preliminarily, we note that a court of common pleas must affirm the order of the commission if the order is supported by reliable, probative and substantial evidence. R.C. 119.12; *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267. In reviewing the administrative order, the common pleas court generally defers to the administrative resolution of issues on which there is conflicting evidence. *Gordon v. Ohio Dept. of Adm. Serv.* (Mar. 31, 1988), Franklin App. No. 86AP–1022, unreported, 1988 WL 37094. On appeal, our review of the common pleas court decision is further limited to an abuse of discretion standard. *Ford v. Ohio Dept. of Natural Resources* (1990), 67 Ohio App.3d 755, 588 N.E.2d 884.

In the first assignment of error, appellant makes the following arguments: (1) that the commission lacked jurisdiction to proceed against him for possession of hypodermic needles because the commission tabled its hearing on the violation until after the expiration of appellant's 1990 license; and (2) that the commission lacked any authority to take further action against appellant based upon appellant's withdrawal of his appeal.

Pursuant to R.C. 3769.091 and Ohio Adm.Code 3769–7–42, the commission has the authority to hear an appeal by any licensee fined, suspended, expelled, or otherwise aggrieved by any stewards' ruling in the application of the rules of racing. Such appeal stays the imposition of the fine or suspension until further action by the commission. Pursuant to Ohio Adm.Code 3769–2–99(B), the commission, upon finding that the licensee has violated a rule, may fine, suspend or revoke any commission license held by the licensee in addition to any other penalty provided for.

Appellant argues that because the commission did not rule until after his 1990 license expired, the commission lacked the jurisdiction to suspend him in the following year, which suspension actually affected his 1991 license. However, pursuant to R.C. 119.091, the failure of any agency to hold an adjudication hearing before the expiration of a license does not terminate the request for a

hearing and does not invalidate any order entered by the agency after holding the hearing. Therefore, the commission did not lose its jurisdiction and appellant's first argument fails.

█ Appellant also argues that the commission lacked the authority to find that the appeal which appellant later withdrew was a frivolous appeal and subjected appellant to further penalties. However, as stated above, Ohio Adm. Code 3769–2–99(B) vests the commission with the authority to impose an additional fine, suspension or revocation of a license in addition to any other penalty already provided for. Inasmuch as the Ohio Administrative Code provides for penalties to be imposed upon a licensee for action against the best interest of horse racing, it was not an abuse of discretion for the trial court to find that the commission properly determined that where a licensee admitted that he filed an appeal simply to stay his suspension so that he could race horses in other races, the commission properly found that such action was against the best interest of horse racing. Appellant's second argument is likewise not well taken.

Appellant's first assignment of error is not well taken and is overruled.

█ In his second assignment of error, appellant argues that the definition of "possession" as found in Ohio Adm.Code 3769–1–40 violates the law of Ohio. Furthermore, appellant argues that the finding that he possessed the hypodermic equipment found in his truck is not supported by reliable, probative and substantial evidence.

Ohio Adm.Code 3769–1–40 defines "possession" as follows:

" 'Possession' or 'in their possession' shall mean: in, on or about the licensee's person, or any vehicle which they own, use, or have access to, as well as the entire area assigned and occupied or used by the responsible person which would include but is not limited to barns, stables, stalls, tack rooms, feed rooms."

By comparison, R.C. 2901.21 defines "possession" for purposes of criminal liability as follows:

"(C) As used in this section:

"(1) Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession."

Furthermore, under R.C. Chapter 2925, pertaining to drug offenses, "possession" is defined as follows in R.C. 2925.01(L):

" 'Possess' or 'possession' means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

Appellant's argument ignores the distinction between liability for criminal offenses and liability for civil violations. Pursuant to R.C. 3769.03, the commission has the authority to prescribe the rules and conditions under which horse racing may be conducted, and may issue, deny, suspend, diminish, or revoke permits to conduct horse racing as authorized by R.C. 3769.01 to 3769.14. The very nature of horse racing itself presents numerous opportunities for abuse. Specific and strict rules are necessary in order to preserve the integrity of the sport. Persons who wish to receive licenses to participate in the sport must conform to certain standards, rules and regulations, which are designed to maintain the integrity of horse racing. It is necessary that members of the commission and its representatives have the right to full and complete entry to any and all areas under the control of the permit holders. Inasmuch as the penalties involved are civil in nature instead of criminal, it is unnecessary that the commission defines "possession" in the same manner in which it is defined for purposes of criminal liability.

Appellant's second assignment of error is not well taken and is overruled.

In his third assignment of error, appellant argues that the commission offered no evidence at the hearing that the sample which tested positive for the drug Terbutaline was taken from Turnonthego, the horse for which appellant was responsible. Appellant argues that the commission did not prove the chain of custody.

However, the evidence demonstrates the contrary. Included in the evidence presented before the hearing officer was a piece of paper, State's Exhibit 3A, which indicates that sample No. 18106 was taken from the horse, Turnonthego, on December 16, 1990. The commission did establish that the sample came from appellant's horse and the fact that the hearing officer indicated that since appellant had not appealed the finding of Terbutaline that appellant's testimony could only be considered for purposes of the mitigation of any penalties, was simply a misstatement of the law which did not affect the outcome of the case.

Appellant's third assignment of error is not well taken and is overruled.

Based on the foregoing, appellant's first, second and third assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

PETREE, J., concurs.

TYACK, J., concurs in part and dissents in part.

**214**

TYACK, Judge, concurring in part and dissenting in part.

The definition of "possession" to be applied by the Ohio State Racing Commission is contained in Ohio Adm.Code 3769–1–40 set forth above. The definition indicates that a racing professional is conclusively presumed to be in possession of items found in any sort of vehicle which the individual owns, uses or has "access to." The definition includes no requirement that the racing professional know that an item is present in or has been placed in a vehicle he or she owns or uses. The definition does not include a requirement that the professional be reckless or negligent in failing to ascertain that an item is in such a vehicle. The definition simply indicates that one possesses the item if it is found in a vehicle one uses, regardless of fault.

Haehn was accused of violating Ohio Adm.Code 3769–8–07, which reads:

"(A) No person shall have in his possession on the premises of a permit holder any drugs, chemicals which may be used as stimulants, hypodermic syringes or hypodermic needles or any other instrument which may be used for injection, or batteries or any other electrical or mechanical instrument which may be used to affect the speed or actions of a horse. Any offending party may be ruled off. This rule shall not be construed to apply to a veterinary surgeon licensed by the commission.

"(B) No veterinarian shall leave a container of any prohibited drug on the premises of a permit holder nor shall he leave or dispose of hypodermic syringes or hypodermic needles or any other instrument which may be used for injection on the premises of the permit holder whether used or unused.

"Any violation of this rule shall be subject to the penalties as outlined in rule 3769–8–99 of the Administrative Code."

Again, if a vehicle a racing professional owns, uses or has "access to" is parked at a race track and someone places a prohibited item in the vehicle, the racing professional can be penalized—whether the professional knows the item is present or not. In a worst case scenario, someone who has a grudge against a specific racing professional could throw a hypodermic needle into the back of a truck owned or used by the professional and then call the track steward to report a violation of Ohio Adm.Code 3769–8–07. The protests of the racing professional would be for naught, since under the definition of "possession," he or she would have violated Ohio Adm.Code 3769–8–07.

The testimony in Haehn's case indicates that he had loaned his truck to his brother for a period of time. During that period of time, Haehn's brother purchased the items found in the truck and placed them out of sight behind a seat in the truck. When asked for permission to search his truck, Haehn freely consented. When the items were found and presented to Haehn, he denied

knowledge of and ownership of the items. Haehn's brother was then questioned immediately and acknowledged his ownership of the items. Sales receipts for some of the items substantiated the brother's claim. As a result, the hearing officer who received evidence on the alleged violations indicated that the brother owned the items, yet found Haehn to have been in possession of them. Therefore, Haehn had his livelihood removed from him for a year and suffered a $1,000 fine, despite the fact that no evidence indicated that he owned the items or knew they had been placed in his truck.

While I share with the other members of this court the desire that the horse-racing industry be conducted in accordance with the highest possible ethical standards, I do not believe that the integrity of the racing industry is furthered by allowing the Ohio State Racing Commission to suspend someone's license for a year under circumstances where no mental culpability has yet been found.

What to me is a more reasonable approach is to engraft on Ohio Adm.Code 3769–8–07 a requirement that the racing professional have been reckless in his or her possession of the prohibited items. Having engrafted that culpable mental state, I would remand this case to the commission for further proceedings to determine if Haehn was reckless in failing to ascertain that he had brought prohibited items onto the track premises. If he is found to have been reckless, an appropriate penalty should be assessed. If he is not found to have been reckless, then no penalty should be attached.

I choose "recklessness" for the applicable culpable mental state because a mental state of "knowingly" would be too easy to avoid by simple denial of knowledge by the professional. Using "recklessness" more clearly allows a penalty to be assessed where a racing professional should have known that he or she was bringing to a race track items which could be used to fix a race. Yet "recklessness" does not encourage imposing a penalty upon those who are not morally blameworthy.

As a result, I would sustain the second assignment of error and remand for further proceedings as indicated above. Since the court is not doing so, I dissent in the disposition of the second assignment of error.

As to our disposition of the first and third assignments of error, I fully concur.