OPINION
{¶ 1} Appellant-appellant, Charles H. Burneson, Jr., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee-appellee, Ohio State Racing Commission ("Racing Commission"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On or around August 27, 2001, Raymond Dennard, Director of Security for Thistledown Racetrack ("Thistledown"), received an anonymous tip that "illegal items" were located in the barn where Mr. Burneson stabled horses. According to Mr. Dennard, the informant stated that Mr. Dennard would find, in Mr. Burneson's barn, a red duffle bag containing illegal items. (Tr. 52.) Prior to conducting a search, Mr. Dennard discussed the information that was provided by the informant with Steve Benich, a representative of the Racing Commission.
 {¶ 3} At approximately 8:17 a.m., on August 29, 2001, Mr. Dennard, Mr. Benich, Thistledown security guard Thomas Gallagher, and Ohio Horseman's Benevolent Protection Association representative Mark Doering conducted a warrantless search of "Barn 21A" at Thistledown, in response to the anonymous tip. When these individuals arrived at Barn 21A, they encountered Kathy Ackman, who, according to Mr. Benich, is also a licensee. Mr. Benich and Mr. Dennard proceeded to the far end of the "shed row." A goat was tied up near this location.[1] Mr. Dennard testified that "underneath a sprinkle of straw" was a red duffle bag. (Tr. 31.) Mr. Dennard opened the bag in front of Mr. Benich, Mr. Gallagher, and Mr. Doering. The items found in the bag on August 29, 2001, included nine bottles of injectables and one syringe with a hypodermic needle. (See Tr. 170; appellee's exhibit 1.)
 {¶ 4} On September 5, 2001, a hearing was conducted before the stewards. The stewards found appellant's possession of said items to be a violation of Ohio Adm. Code 3769-8-01, 3769-8-02,3769-8-07, 3769-2-26(A)(10), and 3769-2-01. Consequently, the stewards fined appellant in the amount of $1,000 and suspended his trainer license for 60 days. (Appellant's exhibit A.) Appellant appealed this ruling to the Racing Commission. On January 7, 2002, a hearing was held before a hearing officer. The hearing officer issued a "Report and Recommendation," in which the officer recommended that the ruling of the stewards be affirmed in its entirety. On July 24, 2002, the Racing Commission issued its "Finding and Order," which agreed to uphold the hearing officer's findings of fact, conclusions of law, and recommendation. The Racing Commission ordered that appellant's thoroughbred trainer's license be suspended for 60 days, that appellant pay a $1,000 fine, and that appellant pay for the costs of the hearing, which was $1,947 above the $500 appeal deposit.
 {¶ 5} Subsequently, appellant appealed from the order of the Racing Commission to the Franklin County Court of Common Pleas, pursuant to R.C. 119.12. Upon its review of the record, the trial court found that the order of the Racing Commission was supported by reliable, probative, and substantial evidence, and was in accordance with law. (See August 27, 2003 judgment entry.) Appellant appeals from this judgment and assigns the following errors:
I. The trial court erred to the prejudice of the appellant and abused its discretion when it found the Ohio State Racing Commission's Administrative Determination, that appellant violated Ohio Adm. Code 3769-8-01 and 3769-8-07, was supported by reliable, probative and substantial evidence and was in accordance with law.
II. The trial court erred to the prejudice of the appellant when it found the Ohio State Racing Commission's Administrative Determination, that appellant violated Ohio Adm. Code3769-2-26[a](10), was in accordance with law.
III. The trial court erred to the prejudice of the appellant when it found that the warrantless search of barn 21a at thistledown racetrack on August 29, 2001 by a representative of the Ohio State Racing Commission and others was in accordance with law.
IV. The trial court erred to the prejudice of the appellant when it found that the alleged cost ($280.) to have state steward Allen Fairbanks attend the hearing held on January 7, 2002 was in accordance with law.
 {¶ 6} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record and determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of LiquorControl (1955), 164 Ohio St. 275, 280.
 {¶ 7} The evidence required by R.C. 119.12 can be defined as follows:
(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, fn. omitted.
 {¶ 8} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'"Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews, at 280. Furthermore, even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive. Conrad, at 111.
 {¶ 9} An appellate court's standard of review in an administrative appeal is even more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio stated:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
 {¶ 10} Id., citing Lorain City School Dist. Bd. of Edn. v.State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261. Thus, in this case, our review of the common pleas court's determination that the commission's order was supported by reliable, probative, and substantial evidence is limited to determining whether the trial court abused its discretion. Moreover, "`abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} In an administrative appeal, an appellate court does have plenary review of purely legal questions. Big Bob's, Inc.v. Ohio Liquor Control Comm., 151 Ohio App.3d 498,2003-Ohio-418, at ¶ 15. Therefore, we must also determine whether the common pleas court's decision is in accordance with law.
 {¶ 12} By his first assignment of error, appellant asserts that the trial court's determination that the Racing Commission's finding that appellant violated Ohio Adm. Code 3769-8-01 and3769-8-07 was not supported by reliable, probative, and substantial evidence and was not in accordance with law. We find appellant's argument to be without merit.
 {¶ 13} Appellant argues that he "has been exonerated" from any violation of Ohio Adm. Code 3769-8-01 because the July 24, 2002 order of the Racing Commission did not refer to Ohio Adm. Code 3769-8-01. (See appellant's brief, at 11.)
 {¶ 14} As stated above, the stewards, on September 5, 2001, charged appellant with violating Ohio Adm. Code 3769-8-01,3769-8-02, 3769-8-07, 3769-2-26(A)(10), and 3769-2-01. The hearing officer recommended that the ruling of the stewards be affirmed in its entirety. The hearing officer's recommendation stated that "[a] search of Charles Burneson Jr.'s barn revealed the presence of a needle, a syringe and injectables in violation of the rules of the Commission. OSRC Rules 3769-8-01,3769-8-02, 3769-8-07, 3769-2-26(A)(10), and 3769-2-01." (Emphasis added.) (See Hearing Officer Report and Recommendation, at 8.)
 {¶ 15} In its July 24, 2002 order, the Racing Commission stated that it "agreed to uphold the Findings of Fact; Conclusions of Law and the Recommendations of the Hearing Officer." In its order, the Racing Commission recognized that appellant was fined and suspended for 60 days because contraband was found during a search of appellant's barn area. However, the Racing Commission stated that "[t]his is a violation of Ohio Rules of Racing #3769-2-01, #3769-2-26, #3769-8-02 and #3769-8-07." (See July 24, 2002 Racing Commission Finding and Order.) Thus, even though the Racing Commission's July 24, 2002 order did not explicitly refer to Ohio Adm. Code 3769-8-01, the Racing Commission "upheld" the findings of fact, conclusions of law, and recommendation of the hearing officer. Appellant's arguments to the contrary, we conclude that this omission in the July 24, 2002 order did not exonerate appellant from his violation of Ohio Adm. Code 3769-8-01. Furthermore, as discussed infra, there was reliable, probative, and substantial evidence to support a finding that contraband was found in appellant's barn area, which is a violation of Ohio Adm. Code 3769-8-01(B)(5).
 {¶ 16} Appellant argues that no evidence was presented at the January 7, 2002 hearing indicating that appellant was in "possession" of "bottles designed for hypodermic administration," as is required under Ohio Adm. Code 3769-8-01(B)(5), or in "possession" of prohibited items for purposes of Ohio Adm. Code3769-8-07. Additionally, appellant asserts that "[t]here was no evidence presented at the hearing that would establish that Thistledown Racetrack (owner of the stall) assigned barn 21A to Charles Burneson." (Appellant's brief, at 12.) We disagree with appellant on this issue.
 {¶ 17} Ohio Adm. Code 3769-8-01(B)(5) provides, in pertinent part, as follows:
On premises under the jurisdiction of the commission, no licensees other than veterinarians shall possess a nasogastric tube, equipment, including bottles designed for hypodermic administration, any foreign substance considered a prescription drug unless it is for an existing condition and is prescribed by a veterinarian, any quantity of sodium bicarbonate (baking soda) or any preparation containing more than 30 grams (one ounce) of sodium bicarbonate. * * *
 {¶ 18} Ohio Adm. Code 3769-8-07 provides, in pertinent part, as follows:
(A) No person shall have in his/her possession on the premises of a permit holder any nasogastric tube, drugs, chemicals which may be used as stimulants, hypodermic syringes or hypodermic needles or any other instrument which may be used for injection, or batteries of any other electrical or mechanical instrument which may be used to affect the speed or actions of a horse. * * *
 {¶ 19} In order for a person to violate Ohio Adm. Code3769-8-01 and 3769-8-07, the person must be in "possession" of a prohibited item. Ohio Adm. Code 3769-1-40 defines "possession" as follows:
"Possession" or "in their possession" shall mean: in, on or about the licensee's person, or any vehicle which they own, use, or have access to, as well as the entire area assigned and occupied or used by the responsible person which would include but is not limited to barns, stables, stalls, tack rooms, feed rooms.
 {¶ 20} The Racing Commission was permitted to make reasonable inferences from the evidence presented at the hearing, which included testimony that the search was conducted at "Chuck Burneson's barn," and that appellant had horses stabled in the area searched. We find that it was reasonable for the Racing Commission to infer from the testimony presented at the hearing that appellant was assigned, and used, the area where the "contraband" was discovered.[2] Therefore, in view of the testimony at the January 7, 2002 hearing, we conclude that the trial court did not abuse its discretion when it found reliable, probative, and substantial evidence to support the Racing Commission's determinations with respect to Ohio Adm. Code3769-8-01 and 3769-8-07. Consequently, we overrule appellant's first assignment of error.
 {¶ 21} In his second assignment of error, appellant asserts that the trial court erroneously found that the Racing Commission's determination that appellant violated Ohio Adm. Code3769-2-26(10) was in accordance with law. Appellant specifically argues that this regulation is "void for vagueness," and that appellant did not violate this regulation because he did not violate the rules of horse racing.
 {¶ 22} Ohio Adm. Code 3769-2-26(A)(10) provides, in pertinent part, as follows:
The commission may refuse to grant, may revoke or may suspend any license, or may otherwise penalize, under the provisions of rule 3769-2-99 of the Administrative Code, a person to whom any of the following apply:
* * *
(10) The applicant or licensee has engaged in conduct which is against the best interest of horse racing[.]
 {¶ 23} Initially, we note that the "specificity requirements which must be met by a criminal statute are not required in the licensing context." Smith v. Haney (1980), 61 Ohio St.2d 46,49, fn. 2, citing Salem v. Liquor Control Comm. (1973),34 Ohio St.2d 244, 246. This case involves a civil proceeding before the Racing Commission in which appellant, as a licensee, was charged with violating Ohio Adm. Code 3769-2-26(10).
 {¶ 24} This court, in State Racing Comm. v. Robertson
(1960), 111 Ohio App. 435, held that, "[t]he phrases, `improper practice on the part of the holder' and `for conduct detrimental to the best interests of racing,' employed in a regulation of an administrative agency, are too broad and indefinite to impose liability for conduct not having a direct relationship to the subject sought to be regulated." Id. at paragraph two of the syllabus.
 {¶ 25} This court further stated:
* * * Assuming the power to license jockeys and regulate their conduct is properly derived from Section 3769.03, Revised Code, any such regulation must have a reasonable relationship to the power to regulate horse racing. Although the question is not free from doubt, we do not go so far as to hold Rule 68 invalid ipsofacto, but do hold that its terms should be so construed as to relate directly to the conduct of horse racing. * * *
Id. at 440.
 {¶ 26} The Second District Court of Appeals in In re Cline
(1964), 3 Ohio App.2d 345, found "Rule 65," which provided that "[a]ny license issued by the Commission may * * * be revoked for corrupt, fraudulent or improper practice on the part of the holder, or for conduct detrimental to the best interests of racing," not to be void for vagueness when the charge directly relates to the conduct of horse racing. Id. at 349-350, citingRobertson, supra. Here, appellant was charged with possessing, in his horse barn, a needle, a syringe, and injectables. Clearly, the possession of such contraband in a horse barn directly relates to horse racing. Moreover, the possession of the contraband in this case was unquestionably "against the best interest of horse racing."
 {¶ 27} Based on the foregoing, we conclude that Ohio Adm. Code3769-2-26(10) is not void for vagueness for charges resulting from the possession of horse racing contraband Also, the evidence presented at the January 7, 2002 hearing supports the finding that appellant violated the rules of horse racing. Accordingly, appellant's second assignment of error is overruled.
 {¶ 28} By his third assignment of error, appellant asserts that the warrantless search that led to the seizure of the red duffle bag was unlawful, and therefore the evidence found via the search "must be suppressed as `fruits' of an illegal search and seizure." (Appellant's brief, at 23.)
 {¶ 29} The Fourth Amendment to the United States Constitution, as applied to the states through theFourteenth Amendment, and Section 14, Article I, of the Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property.[3] "`[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable.'" Wilson v. Arkansas
(1995), 514 U.S. 927, 931, 115 S.Ct. 1914, quoting New Jersey v.T.L.O. (1985), 469 U.S. 325, 327, 105 S.Ct. 733. "Warrantless searches are generally considered unreasonable. * * * Accordingly, evidence obtained by means of a warrantless search is subject to exclusion, unless the circumstances of the search establish it as constitutionally reasonable." (Citations omitted.) AL Post 763 v. Ohio Liquor Control Comm. (1998),82 Ohio St.3d 108, 111. Furthermore, "[c]ertain warrantless searches have been judicially recognized as reasonable notwithstanding the presumption of unreasonableness dictated by theFourth Amendment." Id. citing Stone, supra, at 164-165, fn. 4.
 {¶ 30} We preliminarily note that if a person has no reasonable expectation of privacy in the property searched, then the Fourth Amendment protections do not apply. State v. Lane
(Mar. 11, 1998), Athens App. No. 97CA47, citing Katz v.United States (1967), 389 U.S. 347, 88 S.Ct. 507. Here, appellant had a reasonable expectation of privacy in the area assigned to him by Thistledown, even though the expectation was minimal because horse racing is a pervasively regulated business.
 {¶ 31} Furthermore, the Fourth Amendment only provides protection against government action. State v. Henry (1981),1 Ohio App.3d 126. Thus, a seizure by a private person is not prohibited by the Fourth Amendment. Id., citing Coolidge v. NewHampshire (1971), 403 U.S. 443, 91 S.Ct. 2022; Irvine v.California (1954), 347 U.S. 128, 74 S.Ct. 381; Burdeau v.McDowell (1921), 256 U.S. 465, 41 S.Ct. 574; State v. McDaniel
(1975), 44 Ohio App.2d 163. Considering the Racing Commission representative's participation as well as the Thistledown security director's apparent power to make arrests, we conclude that the search conducted in this case was government action.
 {¶ 32} Because appellant had a reasonable expectation of privacy in the area assigned to him and the search constituted government action, we must determine whether the search of appellant's area in Barn 21A was reasonable under theFourth Amendment.
 {¶ 33} The search in this case was conducted without a warrant. Thus, in order for it to be valid and lawful, the search must have been conducted pursuant to an exception to the warrant requirement. In State v. Akron Airport Post No. 8975 (1985),19 Ohio St.3d 49, 51, the Supreme Court of Ohio listed the recognized exceptions to the search warrant requirement as:
(a) A search incident to a lawful arrest;
(b) consent signifying waiver of constitutional rights;
(c) the stop-and-frisk doctrine;
(d) hot pursuit;
(e) probable cause to search, and the presence of exigent circumstances; or
(f) the plain-view doctrine.
Later, in Stone, supra, at 165, fn. 4, the Supreme Court explicitly added "administrative searches" to the list of recognized warrantless search exceptions.
 {¶ 34} Appellant argues that Ohio Adm. Code 3769-2-01, which provides for searches by the Racing Commission, is unconstitutional because it does not limit the time or scope of the searches it authorizes. We address this issue with caution in view of decisions from other Ohio district courts of appeals. Namely, we take notice of Loom Lodge 926 New Philadelphia, Inc.v. Liquor Control Comm. (Feb. 9, 1995), Tuscarawas App. No. 94AP100070; VFW Post 9622 v. Liquor Control Comm. (1996),109 Ohio App.3d 762; and American Legion Post 0046 Bellevue v. OhioLiquor Control Comm. (1996), 111 Ohio App.3d 795. In each of those cases, the respective appellants argued that the administrative search provision at issue was unconstitutional because it failed to establish sufficient time, place, and scope limitations. Also, in each case, the respective district courts determined that the constitutionality of the search provision could not be challenged because the appellant was not injured by the allegedly unconstitutional provision. See Loom Lodge 926 NewPhiladelphia, Inc.; VFW Post 9622, at 767; and AmericanLegion Post 0046 Bellevue, at 798. Each court cited Palazzi v.Estate of Gardner (1987), 32 Ohio St.3d 169, which held: "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." Id. at syllabus.
 {¶ 35} We conclude that Palazzi does not preclude us from considering the constitutionality of the contested provision. Ohio Adm. Code 3769-2-01 authorized the search in this case, which led to the finding of the injectables. Clearly, appellant has standing to contest the constitutionality of the provision.
 {¶ 36} We observe that the Supreme Court of Ohio has "held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt," and that "[t]his principle applies equally to administrative regulations." Roosevelt Properties Co. v. Kinney
(1984), 12 Ohio St.3d 7, 13. Thus, "[c]ourts accord legislatively authorized administrative regulations a strong presumption of constitutionality." Teeple v. Ohio Real Estate Comm. (Dec. 15, 1988), Cuyahoga App. No. 54836, citing Roosevelt Properties Co.
 {¶ 37} In New York v. Burger (1987), 482 U.S. 691,107 S.Ct. 2636, the Supreme Court of the United States outlined a three-part test for determining whether a warrantless administrative search will be deemed reasonable. "First, there must be a `substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." Id. at 702, citing Donovan v. Dewey (1981), 452 U.S. 594, 602,101 S.Ct. 2534. "Second, the warrantless inspections must be `necessary to further [the] regulatory scheme.'" Burger, at 702, citing Donovan, at 600. Third, "`the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'" Burger, at 703, citing Donovan,
at 603.
In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be "carefully limited in time, place, and scope."
(Citations omitted.) Burger, at 703.
 {¶ 38} Horse racing is a pervasively regulated industry. This court, in Haehn v. Ohio State Racing Comm. (1992),83 Ohio App.3d 208, 213, discussed the regulation of horse racing as follows:
* * * The very nature of horse racing itself presents numerous opportunities for abuse. Specific and strict rules are necessary in order to preserve the integrity of the sport. Persons who wish to receive licenses to participate in the sport must conform to certain standards, rules and regulations, which are designed to maintain the integrity of horse racing. It is necessary that members of the commission and its representatives have the right to full and complete entry to any and all areas under the control of the permit holders. * * *
See Winner v. Ohio State Racing Comm. (Apr. 15, 1998), Wayne App. No. 97CA0014 (noting the broad regulatory powers of the Racing Commission).
 {¶ 39} Although a warrantless administrative search may be reasonable under the Fourth Amendment in the context of pervasively regulated industries such as horse racing, the search must comply with the three requirements of Burger. Clearly, the first and second requirements of Burger are met in this case. At issue is whether the regulation sufficiently limits searches by the inspectors in time, place, and scope.
 {¶ 40} Pursuant to R.C. 3769.03, the Racing Commission "shall prescribe the rules and conditions under which horse racing may be conducted." Ohio Adm. Code 3769-2-01 provides, in pertinent part, as follows:
(A) Members of the commission and its representatives shall have the right of full and complete entry to any and all parts of the grounds and mutual plants of permit holders.
(B) The Ohio state racing commission and its representatives or the state steward investigating for violations of law or of the rules and regulations of the commission, shall have the authority to permit persons authorized by them to search certain persons and areas as follows:
(1) All persons licensed by the commission or persons engaged in activities that require a license by the commission when such persons are within the race track premises or those who have gained access by special permission;
(2) Vendors licensed by the commission when they are within the race track premises;
(3) Stables, rooms, vehicles and any other place within the race track premises used by those persons who may be searched pursuant to this rule;
(4) Stables, rooms and vehicles used or maintained by persons licensed by the commission and which are located in areas outside of the race track premises where horses eligible to race at the race meeting are stabled.
 {¶ 41} Notwithstanding appellant's arguments to the contrary, we find that Ohio Adm. Code 3769-2-01 is not unconstitutional. Ohio Adm. Code 3769-2-01 does provide a time limitation on when a person may be searched under the regulation. Even though the regulation does not explicitly provide guidance as to when a search may take place or the frequency of searches of "stables, rooms, and vehicles," we do not find this as determinative in our assessment of the regulation. Factors such as the frequency of searches are relevant in the constitutionality analysis, but are not necessarily determinative. See Burger, at 712, fn. 21. In fact, "in some situations, inspections must be conducted frequently to achieve the purposes of the statutory scheme." Id., citing United States v. Biswell (1972), 406 U.S. 311, 316,92 S.Ct. 1593. Ultimately, the issue is whether the regulation, "as a whole, places adequate limits upon the discretion of the inspecting officers." Burger, at 712, fn. 21. We find that Ohio Adm. Code 3769-2-01, as a whole, places adequate limits upon the discretion of inspectors in the context of Racing Commission administrative searches. For the foregoing reasons, we overrule appellant's third assignment of error.
 {¶ 42} In his fourth assignment of error, appellant asserts that the trial court erroneously found that appellant was properly assessed costs, which included witness expenses, by the Racing Commission. Essentially, appellant argues that the costs assessed by the Racing Commission were excessive. More specifically, appellant argues that the $280 he has been charged for the presence of Allen Fairbanks, a state steward at Thistledown, at the January 7, 2002 hearing, is contrary to law. We find appellant's argument to be without merit.
 {¶ 43} Ohio Adm. Code 3769-7-44(A) provides as follows:
In the event the commission should hold a hearing pertaining to a violation of the rules of racing and it is necessary to subpoena witnesses, the cost of such witnesses and all other necessary costs of the hearing shall be borne by the licensee found in violation. In case the licensee should be found not in violation of the rules, such cost shall be borne by the commission.
 {¶ 44} Ohio Adm. Code 3769-7-42 provides that "the necessary expenses for the commission to conduct a formal hearing of the appeal * * * may include but are not limited to the cost of a hearing officer, expense of witnesses called, cost of a court reporter and the cost of renting equipment needed during the hearing." The above regulations provide that the cost of witnesses at the hearing may be assessed against a licensee in violation of the Racing Commission rules. Mr. Fairbanks, who was subpoenaed to appear at the January 7, 2002 hearing, testified at said hearing. The Racing Commission's imposition of costs was in accordance with law. Therefore, appellant's fourth assignment of error is overruled.
 {¶ 45} For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Watson, JJ., concur.
[1] Apparently, the presence of a goat can calm a nervous horse.
[2] Possession, as defined under Ohio Adm. Code 3769-1-40, does not require proof of knowledge. See Haehn v. Ohio State RacingComm. (1992), 83 Ohio App.3d 208, 212-213.
[3] The Fourth Amendment to the United States Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Section 14, Article I, of the Ohio Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."
In accord with the Supreme Court of Ohio, we use the term "Fourth Amendment" to collectively refer to both theFourth Amendment to the United States Constitution and Section 14, Article I, of the Ohio Constitution. See Stone v. Stow (1992),64 Ohio St.3d 156, 164, fn. 3.